# EXHIBIT 1

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

UNIX PACKAGING, INC., a California corporation, PHOEBE XU, an individual, and JOHN DOES ONE through TEN

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

BLK ENTERPRISES, LLC, a New York limited liability company,

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**FILED**
Superior Court of California
County of Los Angeles

FEB 0 9 2018

Sherri R. Carter, Executive Officer/Clerk

By_____, Deputy
Anabella Zoe Miro

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse

111 North Hill Street,
Los Angeles, CA 90012

**CASE NUMBER:**
*(Número del Caso):*
BC692002

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Office of Ryan E. Hatch, PC, 13323 Washington Blvd., Ste 100, Los Angeles, CA 90066, (310)279-5076

DATE: FEB 0 9 2018    SHERRI R. CARTER    Clerk, by    Anabella Miro    , Deputy
*(Fecha)*              *(Secretario)*              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☑ as an individual defendant.
2. ☑ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Unix Packaging, Inc., a California Corporation
   under: ☑ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)              ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)        ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

12:49:35 2018-02-09

To: 13106935328 · From: (14422473714) 02/13/18 03:54 PM Page 2 of 5

To: Page 10 of 56 Case 2:18-cv-02151-SVW-KS Document 1-2 Filed 03/14/18 Page 3 of 69 Page ID #:9
2018-02-09 19:51:23 (GMT) 13106935328 From: Ryan Hatch

1 | Ryan E. Hatch (SBN 235577)
Law Office of Ryan E. Hatch, PC
2 | 13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
3 | Work: 310-279-5076
Mobile: 310-435-6374
4 | Fax: 310-693-5328
Ryan@ryanehatch.com
5
Alan D. Sege (SBN 177350)
6 | The Sege Law Practice
13323 Washington Blvd., Suite 100
7 | Los Angeles, CA 90066
Telephone: 310-957-3301
8 | Alan@alansege.com

9 | *Attorneys for Plaintiff*
*BLK. ENTERPRISES, LLC,*
10

**FILED**
Superior Court of California
County of Los Angeles

FEB 0 9 2018

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Anabella Zoe Miro

11 |        **SUPERIOR COURT OF THE STATE OF CALIFORNIA,**

12 |                **COUNTY OF LOS ANGELES**

13

14 | BLK. ENTERPRISES, LLC, a New York limited liability company,

15 |                 Plaintiff,

16 |        v.

17 | UNIX PACKAGING, INC., a California corporation, PHOEBE XU,
18 | an individual, and JOHN DOES ONE through TEN
19
20 |              Defendants.
21
22
23
24
25 |        BY FAX
26
27
28

CASE NO. BC692002

**FIRST AMENDED COMPLAINT**

1) **Misappropriation of Trade Secrets (Defend Trade Secrets Act of 2016, 18 U.SC. § 1836** *et seq.***);**
2) **Misappropriation of Trade Secrets (California Uniform Trade Secrets Act, Cal Civ. Code §3426** *et seq.***);**
3) **Trade Dress Infringement (Lanham Act and California Law)**
4) **Conversion**
5) **Breach of Non-Disclosure Agreement**
6) **Breach of Contract**
7) **Negligence**
8) **Interference With Contractual Relations**
9) **Intentional and Negligent Interference With Prospective Economic Relations**
10) **Unfair Competition**

**JURY TRIAL REQUESTED**

Case No. BC692002

1   COMES NOW Plaintiff BLK. Enterprises, LLC ("BLKE" or "Plaintiff") and,
2   for its Complaint against UNIX Packaging, Inc. ("Unix"), Phoebe Xu ("Xu") and
3   Does One through Ten (collectively, "Defendants"), states the following:

4

5                                  **PARTIES**

6   1.      Plaintiff BLK. Enterprises, LLC is a New York limited liability
7   company with its principal place of business at 10866 Wilshire Boulevard, Suite
8   500, Los Angeles, CA 90024.

9   2.      Defendant UNIX Packaging, Inc. is a California corporation that
10   conducts business at 9 Minson Way, Montebello, CA 90640.

11   3.      Defendant Phoebe Xu is an individual person who, on information and
12   belief, does business as "Spring River Imports," located at 333 North Lantana
13   Street, Suite 267, Camarillo, CA 93010.

14   4.      Plaintiff is ignorant of the true names or capacities of the defendants
15   sued herein under the fictitious names Does One through Ten, inclusive.  On
16   information and belief, the Doe defendants are persons in California, China or
17   elsewhere, who on information and belief have aided, abetted and otherwise
18   contributed to or benefitted from the wrongful behavior alleged herein.

19                          **JURISDICTION AND VENUE**

20   5.      This Court has jurisdiction in this matter because Unix at all times
21   relevant hereto had its principle place of business in Los Angeles County, in
22   Montebello, California, where decision-makers for Unix conduct and oversee its
23   daily affairs.

24   6.      The amount in controversy exceeds the minimum jurisdictional limits
25   of this Court, exclusive of interest and costs and punitive damages.

26   7.      Pursuant to Civil Procedure Code section 395.5, venue in the Superior
27   Court of Los Angeles County is proper.  A substantial portion of the events giving
28   rise to this lawsuit occurred in Los Angeles County.  In particular, BLKE and Unix

1    entered into a contract and course of dealings in Los Angeles County; the

2    performance of the contract and course of dealings were to take place in Los

3    Angeles County; and the breach of the contract and other actions alleged herein

4    occurred in Los Angeles County and elsewhere.

5                                **INTRODUCTION**

6           8.      Defendant Unix induced BLKE to disclose to Unix its confidential

7    trade secret methods and information, to manufacture BLKE's celebrated "BLK."-

8    branded water product—an alkaline water that is black in color due to being infused

9    with fulvic and humic mineral materials.  Unix promised that it would safeguard

10   BLKE's secrets, and that it would not circumvent BLKE by making that type of

11   product for others.  For years, BLKE invested in the relationship, trying time and

12   again to teach Unix to succeed in making the BLK. product.  Throughout, Unix

13   continually violated its contractual obligations to BLKE on matters as simple as

14   timely delivery, quality assurance and taking returns of defectively manufactured

15   product.

16          9.      After years of effort, in 2016, BLKE finally succeed in teaching Unix

17   to how to reliably manufacture the BLK. product.  Then Unix, in concert with

18   defendant Xu and potentially others, misappropriated BLKE's trade secrets and

19   violated the non-disclosure and non-circumvention promises it had made BLKE

20   from the outset.  Unix and Xu conspired together illegally to create a knockoff of

21   BLK. product that they named "USA Water," in an attempt to undercut and displace

22   the BLK. product in BLKE's growing China market.

23          10.     BLKE brings this action to enforce its agreements, stop the

24   misappropriation of its trade dress, stop Unix and Xu's wrongful and illegal

25   behavior, and to be compensated for the harm caused by Defendants' actions.

26                           **FACTUAL BACKGROUND**

27          11.     BLKE is in the business of making and selling health beverages and

28   other beverage products.  BLKE's flagship BLK.® product (the "BLK. Product") is

                                        3                    Case No. BC692002

a black-colored, alkaline (i.e. with pH above 7.0) water product made from humic and fulvic mineral materials. Humic mineral materials are found in plants and soil in the highly nutritious humus layer of the earth. Humic mineral materials are naturally dark in color and nutrient rich. Fulvic mineral materials are a beneficial type of humic mineral material that is effective in making nutrients available to the body. The BLK. Product contains humic and fulvic mineral materials. (Humic and fluvic mineral materials are referred to herein as "Humic" mineral materials.)

**The Unique "BLK." Beverage**

12.     The BLK. Product is highly unique, being the first black-colored Humic mineral-based drinking water beverage on the market. It is made with BLKE's proprietary formulation of Humic mineral materials, which are combined in a proprietary way with purified water that is carefully sourced from multiple locales, including springs and aquifers in the United States and Canada. The black color comes from BLKE's proprietary formulation of Humic mineral materials.

13.     The BLK. Product has achieved worldwide fame not only because of its unique color, but because it also delivers electrolytes, trace minerals and an alkaline pH. Many people seek out bare mineral and electrolyte elements in pill form at drug stores and supermarkets, believing the body absorbs these critical elements more readily when in bare form rather than combined with other chemical complexes contained in food. Thus, naturally-occurring Humic mineral materials are widely seen as an excellent natural source of a wide array of bare mineral elements, separated from chemical complexes.

14.     BLKE has developed proprietary sources and processes to ensure that its mineral materials are more purified than raw Humic material materials, and that the concentrated mineral materials, which are naturally acidic, are combined with water in a manner that promotes clean taste, alkalinity (i.e. high pH), and pure black color.

15.     BLKE was the first in the world to market a black-colored beverage

1   made with Humic mineral materials.  In the years since its inception, the BLK.

2   Product has been featured and celebrated in mass media and in popular culture.

3   **The Parties' Confidentiality and Non-Disclosure Agreement**

4      16.   Defendant Unix is a contract beverage manufacturer who at all times

5   relevant hereto promoted itself as a well-qualified, experienced, and self-professed

6   "Good Manufacturing Practices" manufacturer of bottled beverages for human

7   consumption.

8      17.   BLKE's relationship with Unix began on or around March 11, 2014

9   when BLKE and Unix (collectively the "Parties" or singly a "Party") entered into a

10  Confidentiality and Nondisclosure Agreement (the "NDA," attached hereto as

11  Exhibit A).  Unix agreed to the NDA on or around March 11, 2014, as manifest in

12  correspondence from Unix's Vice President Shawn Arianpour and subsequent

13  correspondence acknowledging that the NDA remains in force.

14     18.   The NDA contemplated a "Proposed Transaction" between the Parties.

15  This transaction was that Unix would manufacture and ship for BLKE a black-

16  colored water product made from Humic mineral materials ("Black Water").

17  Defendant Unix has in fact served as a manufacturer and distributor for BLKE of

18  such a product – the BLK. Product – since March of 2014.  BLKE trusted Unix to

19  be its manufacturer and distributor of the BLK. Product to customers nationally and

20  internationally.

21     19.   The Parties agreed that a recipient of the other Party's "Confidential

22  Information" would "hold in confidence and … not publish or disclose to any third

23  parties any of the DISCLOSING PARTY's Confidential Information without the

24  prior written consent of the DISCLOSING PARTY." (Ex. A at 1, Paragraph 2.)

25     20.   The NDA defines "Confidential Information" broadly, to include:

26  [O]perating agreements and amendments, financial statements, tax returns,
    trade secrets, customer lists, vendor relationships, price lists, business
27  information, including operations, planning, marketing, strategies, and
    product lists, product ingredients, recipes, formulas, and other financial,

28

operational, technical, proprietary, and/or confidential information, whether verbal or written, concerning or pertaining to the DISCLOSING PARTY. (Ex. A at 1, Paragraph 1)

21.    In addition to safeguarding BLKE's Confidential Information, and as an additional inducement for BLKE to bring Unix its manufacturing business, Unix promised not to circumvent BLKE's unique business, in the section entitled, "Non-Circumvention," as follows:

[F]or a period of two (2) years following the disclosure [of Confidential Information]. . . neither RECIPIENT nor any other person or entity directed by him . . . will directly or indirectly pursue, divert, and/or solicit, any Proposed Transaction or a portion thereof or in any manner disclose or discuss the Proposed Transaction with any third party, or refer to or pitch the Proposed Transaction to any third parties and further agree not to pursue divert or solicit any contact or source introduced to RECIPIENT by DISCLOSING PARTY in connection with the Proposed Transaction. (Ex. A at 2, Paragraph 10).

22.    This non-circumvention provision was meant to ensure that as a condition of receiving and using BLKE's intellectual property rights and trade secrets to make BLK. Product, Unix would not let itself be put into a position where other customers would demand that Unix misappropriate those rights and trade secrets to make like Black Water products.

**Disclosure of BLKE Trade Secrets and Provision of Inventory to Unix**

23.    After the Parties entered into the NDA, and pursuant to the protections afforded by the NDA, BLKE began disclosing to Unix its confidential and trade secret information (collectively, the "BLKE Trade Secrets"). The BLKE Trade Secrets include but are not limited to:

a.    Humic mineral material formulations;

b.    Product specifications;

c.    Instructions on obtaining the alkaline pH value;

d.    Instructions on obtaining black color;

e.      Instructions for product labeling;

f.      Supplier lists;

g.      Sales volume information;

h.      Customer lists;

i.      Customer information;

j.      Business and financial results and projections;

k.      Pricing models for different markets;

l.      Distributor contacts;

m.      Marketing strategies;

n.      Certificates of analysis;

o.      Test results; and

p.      Packaging specifications

24.     All of the BLKE Trade Secrets constituted "Confidential Information" under the NDA, and BLKE would never have disclosed the BLKE Trade Secrets to Unix absent the protections afforded by the Parties' NDA.

25.     Moreover, BLKE disclosed the BLKE Trade Secrets to Unix solely for the purpose of Unix manufacturing and distributing the BLK. Product.

26.     BLKE began disclosing the BLKE Trade Secrets after the Parties' entered into the NDA on March 11, 2014, and has continued these disclosures through 2017.

27.     In addition to BLKE Trade Secrets, BLKE also provided Unix the physical inventory and materials needed to manufacture the BLK. Product.  This physical inventory included, without limitation, BLKE's proprietary Humic mineral materials concentrate, bottles, boxes, caps, and labels (collectively, the "BLKE Inventory").

**Unix Struggles to Manufacture Suitable Product**

28.     Unix has claimed publicly from least 2013 that it "specialize[s] in manufacturing a vast variety of genres of drinks," including "Functional Beverages,

1  Carbonated Soft Drinks, Purified and Enhanced Waters, Alkaline Waters,
2  Kombucha and Teas."

3       29.   Despite these claims, Unix's performance was problematic in a wide
4  variety of areas, including without limitation issues with inaccurate inventory and
5  record keeping, incorrect shipping of products, incorrect preparation of products,
6  incorrect labeling, shipping problems, and broken promises regarding the remedial
7  measures that these issues necessitated. Each of Unix's failures resulted in a loss of
8  BLKE Inventory – valuable personal property belonging to BLKE which at times
9  has been impossible to replace.

10      30.   Although it caused recurring production issues, Unix requested full
11  payment up-front from BLKE before beginning production runs. Having been paid,
12  Unix therefore had no financial incentive to correct deficiencies with its
13  performance. Unix took BLKE's money, but refused to take needed efforts to
14  actually manufacture and ship product.

15      31.   Despite the aforementioned issues with Unix, BLKE continued to
16  patiently invest time and effort, repeatedly instructing Unix on how to correctly
17  manufacture the BLK. Product according to product specifications and proprietary
18  processes under the BLKE Trade Secret information.

19      32.   After years of such efforts, in early to mid-2017, Unix finally
20  succeeded in producing BLK. Product that was actually black in color, properly
21  alkaline, with the correct taste, and suitable for consumers.

22  **Unix, Xu and the Doe Defendants Conspire to Manufacture a Knockoff**
23  **Product**

24      33.   Unbeknownst to BLKE, while BLKE was working patiently with Unix,
25  Unix has been surreptitiously eliciting BLKE's confidential and trade secret
26  information to equip itself to make a copycat product to compete directly with the
27  BLK. Product. Unix thereby brazenly breached the Parties' agreements, including
28  the NDA.

34.    On information and belief, Unix conspired with Defendant Xu and John Does, to create, manufacture and sell a copycat version of BLK. Product called "USA" or "USA TM" (the "USA Product").  On information and belief, Unix has manufactured the USA Product, and Xu alone or in concert with John Does have marketed the product in China and elsewhere.

35.    Unix and Xu's unlawful scheme was revealed to BLK in a December 2017 article featured on the "WeChat" social media service in China, promoting the USA Product (the "Article," attached hereto as Exhibit B).  On information and belief, Defendants are responsible for the content of the Article and for disseminating it throughout the world including in the United States.

36.    The Article in English translation is entitled "Another imported black water drink arrived in China lately to fight Canada BLK black water."  In an attempt to disparage the BLK. Product, the Article associates it with Canada, and pits the allegedly United States-sourced USA Product against it in competitive fashion.

37.    In fact, BLK. Product is manufactured in the United States, using water from the United States, and BLKE is a United States corporation with its principal place of business in Los Angeles, California.  BLKE's founders are from Canada, and on information and belief, this is among the information that Unix provided Defendant Xu and the co-conspirators attempting to pirate BLK. Product in China.

38.    The Article in English translation further states that "Canada blk black water entered China earlier than the United States USA black water. Currently their prices in the e-commerce platform are similar, which one is better in the Chinese market? Let's wait and see!"

39.    The Article juxtaposes photographs of the knockoff USA Product with the BLK. water.  (Ex. B at 2).



40.     The Article focuses on promoting the striking similarities of the knockoff USA Product with the authentic BLK. Product.  It remarks on the catchiness of the USA Product's trade dress, which is a blatantly copied version of the BLK. Product's distinctive trade dress.  The Article in English translation describes the USA Product packaging as "eye-catching" and highlights its "cool temperament."  It features the USA Product trade dress side by side with the BLK. Product's trade dress so as to create a confusing association in the minds of consumers between the products.

41.     The Article highlights the similarity of the USA Product packaging design to the BLK. Product's distinctive packaging, showing the same elements for an almost identical look and feel of each of the products.  (Ex. B at 4.)

 

42.     The Article boasts the similarity of the knockoff USA Product trade dress with that of the original BLK. trade dress belonging to BLKE.  It states that the USA Product is sold in the same channel in the Chinese market as the BLK. Product, for example on the e-commerce website jd.com.

43.     The USA Product indicates its source as "Spring River Imports."  On information and belief, Spring River Imports is a sole proprietorship of the defendant Xu.  Xu's website contains a page featuring Spring River Imports at http://phoebechinatour.com/id19.html.

**Unix's Role in Manufacturing and Distributing the USA Product**

44.     As an egregious circumvention of BLKE's business and violation of the NDA, Unix played the vital role in manufacturing and distributing the knockoff USA Product.

45.     For example, the Article shows a photograph of Unix co-owner and Vice President Shawn Arianpour and Unix plant manager Ever Campos posing with defendant Xu, with cases of the USA Product in the background.  (Ex. B at 3).

46.     Unix knew that the BLK. Product had become very popular in China, because it had shipped significant quantities of the BLK. Product to China.

47.     On January 3rd, 2018 Unix responded to an inquiry by BLKE, acknowledging that Unix is in fact the manufacturer of the USA Product, and affirmed that the NDA remains in force.  BLKE has been working diligently to resolve these issues with Unix and avoid litigation, but those efforts have failed.

48.     Unix has refused BLKE's requests to cease and desist from the unlawful activities described herein, and this action followed.

## COUNT I

### MISAPPROPRIATION OF TRADE SECRETS

**Defend Trade Secrets Act of 2016, 18 U.SC. § 1836 *et seq*.**

**(Against All Defendants, Jointly and Severally)**

49.     BLKE repeats and realleges each allegation of the proceeding paragraphs.

50.     BLKE has developed at substantial expense, and continues to maintain, the BLKE Trade Secrets.

51.     The BLKE Trade Secrets are economically valuable to BLKE and are not known or readily ascertainable by proper means to any third party.

52.     The BLKE Trade Secrets are confidential and proprietary.

53.     BLKE takes adequate measures to protect the BLKE Trade Secrets, including but not limited to, by obtaining confidentiality and nondisclosure agreements.

54.     All of the BLKE Trade Secrets are trade secrets under the Defend Trade Secrets Act of 2016, 18 U.SC. § 1836 *et seq.* (the "DTSA").

55.     BLKE takes reasonable and adequate measures to protect the BLKE Trade Secrets from unauthorized use and disclosure by, for example, requiring parties who receive access to proprietary information and other BLKE Trade Secrets to sign confidentiality and nondisclosure agreements.

56.     Each and every one of the BLKE Trade Secrets is a trade secret under the DTSA.

57.     BLKE has spent considerable time, effort and resources in developing and maintaining the BLKE Trade Secrets.

58.     Defendants have acquired BLKE's aforementioned trade secrets through improper means and are using such trade secrets to derive an unfair and improper commercial advantage over BLKE.

59.     For example, BLKE recently discovered that Defendants were using the BLKE Trade Secrets to manufacture and distribute the USA Product.

60.     As another example, Defendant Xu and on information and belief the Doe defenddants, have acquired BLKE's trade secrets by inducing Unix to disclose them to her and misuse them for the purpose of creating and manufacturing the USA Product.

61.     Defendants' acquisition of and use of the BLKE Trade Secrets constitutes misappropriation in violation of the DTSA.

62.     Defendants know that they have misappropriated the BLKE Trade

13

Case No. BC692002

1  Secrets to manufacture the USA Product.  Defendants have benefited by marketing

2  and selling the USA Product.

3      63.  As a result of Defendants' misappropriation, BLKE has suffered

4  damages in an amount to be determined at trial.

5      64.  Defendants' misappropriation of trade secrets have caused, and unless

6  enjoined will continue to cause, BLKE irreparable harm for which no adequate

7  remedy exists at law.

8      65.  BLKE requests all damages for actual loss caused by

9  Defendants'misappropriation, damages for Defendants' unjust enrichment caused by

10  the misappropriation, punitive damages, and its attorneys' fees.

11      66.  BLKE further requests an injunction against Defendants'

12  misappropriation.

13  ## COUNT II

14  ## MISAPPROPRIATION OF TRADE SECRETS

15  **California Uniform Trade Secrets Act, Cal Civ. Code §3426 *et seq.***

16  **(Against All Defendants, Jointly and Severally)**

17      67.  BLKE repeats and realleges each allegation of the proceeding

18  paragraphs.

19      68.  BLKE has developed at substantial expense, and continues to maintain,

20  the BLKE Trade Secrets.

21      69.  The BLKE Trade Secrets are economically valuable to BLKE and are

22  not known or readily ascertainable by proper means to any third party.

23      70.  The BLKE Trade Secrets are confidential and proprietary.

24      71.  BLKE takes adequate measures to protect the BLKE Trade Secrets,

25  including but not limited to, by obtaining confidentiality and nondisclosure

26  agreements.

27      72.  All of the BLKE Trade Secrets are trade secrets under the California

28  Uniform Trade Secrets Act, Cal Civ. Code §3426 *et seq.* (the "CUTSA").

73. BLKE takes reasonable and adequate measures to protect the BLKE Trade Secrets from unauthorized use and disclosure by, for example, requiring parties who receive access to proprietary information to sign confidentiality and nondisclosure agreements.

74. Each and every one of the BLKE Trade Secrets is a trade secret under the CUTSA.

75. BLKE has spent considerable time, effort and resources in developing and maintaining the BLKE Trade Secrets.

76. Defendants have acquired BLKE's aforementioned trade secrets through improper means and are using such trade secrets to derive an unfair and improper commercial advantage over BLKE.

77. For example, BLKE recently discovered that Defendants were using the BLKE Trade Secrets to manufacture and distribute the USA Product.

78. As another example, Defendant Xu and, on information and belief, the Doe defendants, have acquired BLKE's trade secrets by inducing Unix to disclose them to her and misuse them for the purpose of creating and manufacturing the USA Product.

79. Defendants' acquisition of and use of the BLKE Trade Secrets constitutes misappropriation in violation of the CUTSA.

80. Defendants know that they have misappropriated the BLKE Trade Secrets to manufacture the USA Product. Defendants have benefited by marketing and selling the USA Product.

81. As a result of Defendants' misappropriation, BLKE has suffered damages in an amount to be determined at trial.

82. Defendants' misappropriation of trade secrets have caused, and unless enjoined will continue to cause, BLKE irreparable harm for which no adequate remedy exists at law.

83. BLKE requests all damages for actual loss caused by Defendants'

1  misappropriation, damages for Defendants' unjust enrichment caused by the

2  misappropriation, punitive damages, and its attorneys' fees.

3       84.    BLKE further requests an injunction against Defendants'

4  misappropriation.

## COUNT III

## TRADE DRESS INFRINGEMENT

### Lanham Act and California Law

### (Against All Defendants, Jointly and Severally)

9       85.    BLKE repeats and realleges each allegation of the proceeding

10 paragraphs.

11      86.    BLKE's packaging for the BLK. Product is inherently distinctive, as

12 evidenced for example by public statements and commentary.

13      87.    For example, the Article admits that the design of the packaging of the

14 BLK. Product is unique and distinctive by comparing it to the nearly identical USA

15 Product.

16      88.    BLKE has developed distinctive packing that users identify with the

17 BLK. Product.

18      89.    BLKE's packaging has acquired distinctiveness through many years of

19 national and international sales, advertising, through mass media and celebrity

20 attention, and by being firmly ensconced in popular culture.

21      90.    The elements, arrangement, and look and feel of the packaging are

22 separate and distinct from the functional aspects of those beverage products.

23      91.    The elements, arrangement, and look and feel of the packaging, in its

24 totality, constitute protectable trade dress for the BLKE Product. Examples of these

25 combinations of elements, and the look and feel they create, are shown in the

26 following:

27

28

Case No. BC692002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



(BLK. Product compared to USA Product)

92.    Defendants have substantially copied BLKE's trade dress in its packaging:

Blk. Beverage is a purified water with our proprietary blend of alkaline Fulvic Trace Mineral and electrolyte complex. Our blend of trace minerals is what gives blk. its distinct black color. With benefits for an active life and the purity of water, blk. is the next step in the evolution of water. Defy expectations with blk. Enjoy the Dark Side.

## Go Without!

Zero calories, sugars, caffeine, flavoring or dyes.

## Electrolytes & Minerals

Balanced water = balanced life.

## Purity

Purified water infused with trace minerals. That's it!

(BLK. Product compared to USA Product)

93.   Defendants have copied almost every element of BLKE's trade dress, as shown below:

| BLK. Product | USA Product |
| --- | --- |
| Three letter logo near the top of the bottle | *Same* |
| White font | *Same* |

18

Case No. BC692002

FIRST AMENDED COMPLAINT

| | |
|---|---|
| Sans-serif characters | *Same* |
| Two line slogan near bottom of bottle on front face | *Same* |
| 16.9 fl. oz. (500 ml) capacity | *Same* |
| Black bottle cap | *Same* |
| "B-L-K." sounded out rhymes with "U-S-A" | *Same rhyme:* "B-L-K." sounded out rhymes with "U-S-A" |
| *Ingredients*: "Purified Water & Fulvic Trace Minerals" | *Ingredients*: "Purified water & minerals complex" |
| Distributor location: Los Angeles, California | Distributor location: Camarillo, California |
| "Alkaline pH 8.0+" | *Same* ("Alkaline ph8+") |
| "Balanced water = balanced life" | "Offering a balanced drink; achieving a balanced life" |
| "Zero calories, sugars, caffeine, flavoring or dyes" | "Zero calories, carbohydrates, sugars and dyes" |
| "With benefits for an active life" | "designed to aid in refreshment after a workout, while riding the rails, during a break at work, or on the dance floor" |
| "purified water with our proprietary blend of alkaline Fulvic Trace Mineral and electrolyte complex | "Infused with wholly natural fulvic mineral extract; rich trace minerals." |
| "Electrolytes & minerals" | "Electrolytes from the Earth." |

94.     Defendants have created a likelihood of confusion as to the source, or as to sponsorship, affiliation, or connection between the USA Product and the BLK Product covered by that trade dress.

95.     Defendants' activities as stated herein constitute trade-dress infringement in violation of §43(a) of the Federal Trademark Act, and under the common law of the State of California.

96.     Defendants' infringement of BLKE's trade dress is willful, as evidenced for example by statements in the Article indicating an intent to copy and create an association between the two products.

97.     Defendants' infringement of BLKE's trade dress have caused, and

1  unless enjoined will continue to cause, BLKE irreparable harm for which no

2  adequate remedy exists at law.

3  ## COUNT IV

4  ## CONVERSION

5  ### (Against Unix)

6  98.  BLKE repeats and realleges each allegation of the proceeding

7  paragraphs.

8  99.  That BLKE Inventory remaining in Unix's possession is BLKE's

9  personal property.

10  100.  BLKE has a right to possession of the BLKE Inventory, as Unix has

11  not paid BLKE for that remaining inventory, nor has it been used to create products

12  for BLKE under the NDA.

13  101.  Unix has exercised dominion over the Inventory by refusing its rightful

14  return to BLKE and on information and belief repurposing the BLKE Inventory to

15  produce the USA Product, and potentially other purposes separate from BLKE or

16  against BLKE's wishes or interests.

17  102.  Unix has further exercised dominion over the BLKE Inventory by

18  refusing to return it to BLKE.

19  103.  As recently as last month, Unix at first invited BLKE to retrieve its

20  inventory.  Upon further inquiry, Unix informed BLKE that it refused to return the

21  inventory, which it stated it would withhold until BLKE paid certain amounts that

22  BLKE does not owe Unix.

23  104.  Unless enjoined, Unix's conversion of the BLKE Inventory, which

24  upon information and belief is illegally being used to create the USA Product, has

25  caused, and unless enjoined will continue to cause, BLKE irreparable harm for

26  which no adequate remedy exists at law.

27  105.  Unless enjoined, Unix's conversion of the BLKE Inventory will

28  continue to force BLKE to spend additional money and consume valuable resources

1  to procure additional scarce Inventory, will cause loss of sales and customers, and

2  other damages to be proven at trial.

3      106.  Even if enjoined, during the time Unix has converted and refused to

4  return the BLKE Inventory, some of it has been wasted and lost, entitling BLKE to

5  additional damages including the price of those materials and lost sales.

6  **COUNT V**

7  **BREACH OF NON-DISCLOSURE AGREEMENT**

8  **(Against Unix)**

9      107.  BLKE repeats and realleges each allegation of the proceeding

10  paragraphs.

11      108.  On March 11, 2014, BLKE and Unix executed the NDA, which is a

12  valid and enforceable contract, which has been from its inception binding on BLKE

13  and Unix.

14      109.  In the NDA, Unix promised, among other things, neither to misuse

15  BLKE's Confidential Information nor to circumvent the BLKE in producing

16  copycat versions of BLK. Product.

17      110.  For example, Section 10 of the NDA prohibits Unix from "directly or

18  indirectly pursue, divert and/or solicit any Proposed Transaction or a portion thereof

19  or in any manner disclose or discuss the Proposed Transaction with any third party

20  other than [BLKE] or refer or pitch the Proposed Transaction to any third parties…"

21      111.  Unix further agreed, in Section 10 of the NDA, "not to pursue, divert or

22  solicit any contact or source introduced to [Unix] by [BLKE] in connection with the

23  Proposed Transaction." "Proposed Transaction" is defined broadly as any "business

24  opportunity and/or acquisition transaction" of the sort discussed or pursued by Unix

25  and BLKE.

26      112.  The Proposed Transaction referred to in the NDA was for Unix to

27  manufacture a Black Water for BLKE.  So when it promised not to pursue a

28  Proposed Transaction with others, BLKE rightfully expected, at the very least, that

21

Case No. BC692002

1    Unix would not pursue manufacturing the same type of Black Water product for

2    others.

3         113.   In Section 2 of the NDA, Unix also agreed to safeguard the

4    confidentiality of all BLKE's Confidential Information.

5         114.   Unix has breaching the NDA by, for example, wrongfully disclosing

6    and using BLKE's confidential information, including the BLKE Trade Secrets;

7    developing, manufacturing and distributing circumventing products; and on

8    information and belief, by contacting BLKE's suppliers and customers for such anti-

9    BLKE purposes.

10        115.   BLKE has performed, and continues to perform, all of its obligations

11   under the NDA.

12        116.   As a result of Unix's breach of the NDA, BLKE has suffered damage

13   and under Section 11 of the NDA is entitled to "all remedies that are available at

14   law, including but not limited to … lost profits, lost business and other commercial

15   or economic loss," in an amount to be determined at trial.

16        117.   Pursuant to Section 11 of the NDA and under all applicable law, any

17   breach of the NDA would cause irreparable harm to BLKE for which damages are

18   not an adequate remedy, entitling BLKE to equitable relief in the form of an

19   injunction.

20                **COUNT VI**

21             **BREACH OF CONTRACT**

22               **(Against Unix)**

23        118.   BLKE repeats and realleges each allegation of the proceeding

24   paragraphs.

25        119.   Following execution of the NDA on or around March 11, 2014, the

26   Parties entered into an agreement under which Unix would manufacture the BLK.

27   Product for BLKE.  This agreement incorporated all of the terms of the NDA, and is

28   evidenced by: the NDA's reference to a "Proposed Transaction"; the parties'

communications; their course of dealing; payments and receipt of payments; writings; Unix's manufacture and shipping of the BLK. Product over the course of nearly four years; and the other conduct of the Parties subsequent to the execution of the NDA.

120.   In the agreement, BLKE agreed: (1) not to breach the NDA; (2) to provide Unix with the BLKE Inventory for production of the BLK. Product and only the BLK. Product and no other product; (3) to provide information as requested by Unix to support performance of Unix's obligations under the agreement; and (4) to pay for correctly-manufactured and shipped BLK. Product.

121.   Under the agreement, BLKE has paid Unix no less than $497,173.70, and has provided Unix with upwards of $1.7 million in materials for manufacturing Black Water. But, Unix delivered far less BLK. Product than this amount of inventory should have produced, leaving a large quantity of raw materials unaccounted for.

122.   Under the Parties' agreement, and for valuable consideration, Unix agreed:

    a.    To comply with all of the terms of the NDA, including but not limited to the circumvention and confidentially provisions that it has in fact breached;

    b.    When orders were accepted, to manufacture the BLK. Product according to: (1) the correct quantity of bottles, cases and packs; (2) the correct black color; (3) the correct alkalinity; (4) the correct ratios of Humic mineral materials to water; (5) the correct water sources; (6) the correct affixing of labels to bottles; and (7) the correct date coding;

    c.    To undertake quality control and create certificates of analysis;

    d.    To be FDA-compliant, and be and remain qualified and GMP-certified to produce BLK. Product in its location in California;

| | | |
|---|---|---|
| 1 | e. | To ship by deadlines to correct address with appropriate |
| 2 | | certificates, customers forms, and other documentation; |
| 3 | f. | To inform BKLE of any manufacturing issues as soon as Unix |
| 4 | | becomes aware, and in all events before shipment; |
| 5 | g. | To avoid shipping defective product; |
| 6 | h. | To produce BLK. Product at yield rates of 98% or higher; |
| 7 | i. | To avoid short shipments absent BLKE approval; |
| 8 | j. | To accurately track inventory and provide inventory reports upon |
| 9 | | request; |
| 10 | k. | To store inventory in appropriate conditions, including but not |
| 11 | | limited to appropriate security and climate control; |
| 12 | l. | To return unused inventory upon request; |
| 13 | m. | To retrieve rejected products from their destination locations; |
| 14 | n. | To provide refunds for rejected products; |
| 15 | o. | As Unix was holding inventory for the mutual benefit of itself |
| 16 | | and BLKE, Unix was required to keep track of and safeguard the |
| 17 | | inventory with at least reasonable care; |
| 18 | p. | and |
| 19 | q. | In furtherance of the non-circumvention clause in the NDA, to |
| 20 | | inform BLKE of requests received from third parties wishing to |
| 21 | | manufacture Black Water, and to reject all such requests, and not |
| 22 | | make any other competing products. |

23    123.   The Parties' agreement is a valid and enforceable contract, which has

24 been from its inception and remains today binding on BLKE and Unix.

25    124.   Unix has breached the agreement by, for example, engaging in the

26 wrongful conduct described in this Complaint, which is incorporated herein by

27 reference, including but not limited to the following wrongful conduct:

28           a.   Engaging in the manufacture and distribution of the USA

1             Product;

2       b.     Proving monthly inventory reports that were riddled with errors

3             and inconsistencies (e.g. different quantities of inventory month-

4             to-month, even during periods where production had halted and

5             the inventory should have remained constant), despite BLKE's

6             requests as far back as 2014 that Unix deliver accurate reports;

7       c.     Failing to deliver any accurate records showing how much

8             inventory Unix had received, and what inventory Unix had in its

9             possession at any given time;

10      d.     Failing to account for two containers of BLK. Product

11            manufactured for a BLKE customer in the United Arab Emirates,

12            and by the time it was included in an inventory accounting the

13            shelf life of the product was only a mere six months, rendering

14            the product unusable by the time it was shipped to the customer;

15      e.     Using an incorrect ratio of the various Humic mineral materials

16            and water, rendering the product a light muddy brown color

17            instead of its signature black as recently as March 2016;

18      f.     Refusing to make any refund payment or compensate for its

19            mistakes, including for the aforementioned defective brown-

20            colored product;

21      g.     Incorrectly labeling and poor product quality for shipment to

22            Chinese customers in July of 2017, leading the customer to reject

23            the shipment;

24      h.     Failing to pick up defective product, requiring BLKE's CEO and

25            a third-party inspector to travel to China to inspect and retrieve

26            the defective product at significant expense of time and resources

27            to BLKE;

28      i.      Failing to pick up a batch of defective product shipped to a

1                      customer in the United Arab Emirates;

2          j.      Short delivering only 14,400 bottles of 24,00 bottles ordered for

3                      a customer in Columbia, failing to provide the correct customs

4                      documentation, and severely delaying the product's delivery to

5                      its customer in Colombia, requiring BLKE to pay port and other

6                      customs fees; and

7          k.      Producing defective packaging for the BLK. Product, in the form

8                      of missing expiration dates and improperly-applied labels, and

9                      providing the wrong 24 packs of 25 ml product for a customer.

10      125.    BLKE has performed, and continues to perform, all of its obligations

11 under the agreement.

12      126.    As a result of Unix's breaches, BLKE has been damaged in the form of

13 lost sales and profits, in an amount to be determined at trial.

14 **COUNT VII**

15 **NEGLIGENCE**

16 **(Against Unix)**

17      127.    BLKE repeats and realleges each allegation of the proceeding

18 paragraphs.

19      128.    Unix owed to BLKE a duty to use such reasonable skill and care as

20 would be exercised by a reasonably prudent manufacturer and shipper under similar

21 circumstances.  This includes, without limitation, a duty to of care to accurately

22 track, account for and safeguard all BLKE Inventory, to manufacture products

23 according to specification, to ship correct product to correct destinations with

24 correct documentation by correct methods, and to undertake appropriate quality

25 control.

26      129.    Unix breached the duty of care by, for example, failing to accurately

27 track and account for and safeguard all BLKE Inventory, by failing to manufacture

28 products according to specification, by failing to undertake appropriate quality

1  control, and by failing to ship correctly.

2  130. Unix's breaches of its duty of care were the cause in fact and proximate
3  cause of damages to BLKE.

4  131. But for the breaches, BLK. Product would have been manufactured and
5  shipped correctly, BLKE Inventory would be properly accounted for and
6  safeguarded, quality control would be assured, and BLKE Inventory would not have
7  been lost.

8  132. Unix's breaches caused injury to BLKE in the form of lost or wasted
9  BLKE Inventory, lost sales and lost profits, in an amount to be determined at trial.

10  133. Unix's breaches caused additional injury to BLKE by disparaging
11  BLKE's reputation as a supplier of quality products.

12  ## COUNT VIII

13  ### INTERFERENCE WITH CONTRACTUAL RELATIONS

14  **(Against Xu and Does One Through Ten, Jointly and Severally)**

15  134. BLKE repeats and realleges each allegation of the proceeding
16  paragraphs.

17  135. As alleged in the preceding paragraphs, valid agreements existed
18  between BLKE and Unix, which would have continued to result in an economic
19  benefit to BLKE. For example, it was expected that Unix would continue to provide
20  manufacturing services for BLKE by bottling the delivering the BLK. Product to
21  customers throughout the world.

22  136. Xu and the Doe defendants knew of the agreement between BLKE and
23  Unix, for example because Unix's name and contact information were printed on the
24  labels of the BLK. Product.

25  137. Xu and the Doe defendants engaged in wrongful conduct, including but
26  not limited to engaging with Unix to make a knockoff Black Water product by
27  means of all of the unlawful acts described herein.

28  138. By engaging in this wrongful conduct, Xu and the Doe defendants

27

Case No. BC692002

FIRST AMENDED COMPLAINT

1  intended to disrupt the relationship between BLKE and Unix, or knew that

2  disruption of the relationship was certain or substantially certain to occur.

3      139.  Xu and the Doe defendants failed to act with reasonable care to prevent

4  such disruption.

5      140.  The relationship between BLKE and Unix was disrupted. For example,

6  Unix under-performed and breached many of its obligations to BLKE, and even

7  ceased  performing its obligations all together, disrupting BLKE's supply chain, and

8  harming its relationships with its customers.

9      141.  BLKE was forced to engage the services of another manufacturer for

10  the BLK. Product.

11      142.  BLKE has been damaged in the form of lost or wasted BLKE

12  Inventory, lost sales and profits, costs associated with having to change

13  manufacturers, and other damages in an amount to be determined at trial.

14      143.  Xu and the Doe defendants' conduct was a substantial factor in causing

15  harm to BLKE.

16      144.  Xu and the Doe defendants acted with oppression, fraud and malice,

17  entitling BLKE to punitive damages.

18  <u>**COUNT IX**</u>

19  **INTENTIONAL AND NEGLIGENT INTERFERENCE WITH**

20  **PROSPECTIVE ECONOMIC RELATIONS**

21  **(Against Xu and the Doe Defendants, Jointly and Severally)**

22      145.  BLKE repeats and realleges each allegation of the proceeding

23  paragraphs.

24      146.  As alleged in the preceding paragraphs, valid agreements existed

25  between BLKE and Unix, which would have continued to result in an economic

26  benefit to BLKE.  For example, it was expected that Unix would continue to provide

27  manufacturing services for BLKE by bottling the delivering the BLK. Product to

28  customers throughout the world.

28

Case No. BC692002

147.   Xu and the Doe defendants knew or should have known of the agreement between BLKE and Unix, for example because Unix's name and contact information were printed on the labels of the BLK. Product.

148.   Xu and the Doe defendants engaged in wrongful conduct, including but not limited to engaging with Unix to make a knockoff Black Water product by means of all of the unlawful acts described herein.

149.   By engaging in this wrongful conduct, Xu and the Doe defendants intended to disrupt the relationship between BLKE and Unix, or knew that disruption of the relationship was certain or substantially certain to occur.

150.   Xu and the Doe defendants knew or should have known that the relationship between BLKE and Unix would be disrupted by its conduct, and failed to act with reasonable care.

151.   The relationship between BLKE and Unix was disrupted. For example, Unix under-performed and breached many of its obligations to BLKE, and even ceased performing its obligations all together, disrupting BLKE's supply chain, and harming its relationships with its customers.

152.   BLKE was forced to engage the services of another manufacturer for the BLK. Product.

153.   BLKE has been damaged in the form of lost and wasted BLKE Inventory, lost sales and profits, costs associated with having to change manufacturers, and other damages in an amount to be determined at trial.

154.   Xu and the Doe defendants' conduct was a substantial factor in causing harm to BLKE.

155.   Xu and the Doe defendants' conduct was fraudulent, entitling BLKE to punitive damages.

## COUNT X

### UNFAIR COMPETITION

### California Business and Professions Code § 17200, *et. seq*.

### (Against all Defendants Jointly and Severally)

156.   BLKE repeats and realleges each allegation of the proceeding paragraphs.

157.   The Unfair Competition Law, California Business and Professions Code § 17200, *et. seq.* ("UCL"), prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue and misleading advertising."

158.   Defendants have committed unlawful, unfair, and fraudulent acts and practices and have engaged in unfair, deceptive, untrue and misleading advertising.

159.   As an example, the Defendants have substantially copied the BLK. Product's distinctive trade dress, producing a nearly identical product that takes advantage of the BLK. Product's success in order to boost USA Product's sales and make a profit at BLKE's expense, and by creating a likelihood of confusion as to the source, or as to sponsorship, affiliation of their knock-off Black Water product.

160.   As another example, Defendants identify the BLK. Product as "Canadian," pitting it against their "American" product, USA water in a competitive fashion, as documented in the Article.  This is untrue and misleading to consumers, as BLK. water is manufactured in the United States and BLKE is an American company with its principal place of business in Los Angeles, California.

161.   As another example, the Defendants misappropriated BLKE's trade secrets in order develop and distribute a knock-off product and gain an unfair commercial advantage over BLKE;

162.   As another example, Defendants converted BLKE's inventory to produce their own competing product.

163.   As another example, Unix violated the non-circumvention promise of the NDA so it could produce a knock-off product utilizing trade secrets and

Case No. BC692002

FIRST AMENDED COMPLAINT

1  confidential information of BLKE, to divert BLKE's business and resources to

2  itself.

3      164.   As another example, Unix breached the NDA so it could capitalize on

4  BLKE's knowledge, relationships, and other resources to quickly manufacture and

5  distribute a competing product.

6      165.   As another example, Xu and the Doe defendants, knowing from the

7  BLK. Product label that Unix is a manufacturer of the BLK. Product, and that Unix

8  had an agreement and duties of secrecy and non-circumvention, negligently or

9  intentionally induced Unix to breach those agreements.

10     166.   The Defendants' unlawful, unfair, and fraudulent business acts and

11 practices and unfair, deceptive, untrue and misleading advertising, BLKE has

12 suffered substantial damages in an amount to be proven at trial.

13                          **PRAYER FOR RELIEF**

14     WHEREFORE, Plaintiff prays for relief as follows:

15     1.     Judgment in favor of BLKE and granting all relief requested in all

16 counts above;

17     2.     A preliminary and permanent injunction prohibiting Defendants from:

18         • Manufacturing, distributing or selling the USA Product or any other

19           Black Water product;

20         • All use of the BLKE Trade Secrets, including in the manufacture,

21           distribution, or sale of the USA Product or any other product;

22         • All use of BLKE's confidential information, including in the

23           manufacture, distribution, or sale of the USA Product or any other

24           product;

25         • Infringing BLKE's trade dress, including in the manufacture,

26           distribution, or sale of the USA Product or any other product; and

27         • Using BLKE's converted property, including for the manufacture,

28           distribution, or sale of the USA Product or for any other purpose other

1                than the manufacture of BLK. Product;

2       3.      An award of actual damages, in an amount to be proven at trial;

3       4.      An award of all damages for actual loss caused by Defendant's

4 wrongful conduct, damages for Defendants' unjust enrichment, punitive damages,

5 and BLKE's attorneys' fees;

6       5.      An Order that Defendants disgorge all financial benefits, including

7 profits, realized as a result of its wrongful conduct as alleged herein;

8       6.      An award of BLKE's lost profits in the United States, and worldwide

9 including China, in an amount to be determined at trial;

10       7.      An award of costs and reasonable attorneys' fees incurred in this

11 action; and

12       8.      Such other and further relief as the Court deems just and proper.

13                     **JURY DEMAND**

14       Plaintiff hereby demands a trial by jury.

15

16 Dated: February 9, 2018

17                       By:       */s/ Ryan E. Hatch*

18

19                         Ryan E. Hatch (CA SB No. 235577)

20                         LAW OFFICE OF RYAN E. HATCH, PC
                           13323 Washington Blvd., Suite 100

21                         Los Angeles, CA 90066
                           Work: 310-279-5076

22                         Mobile: 310-435-6374

23                         Fax: 310-693-5328
                           ryan@ryanehatch.com

24

25                         Attorney for Plaintiff

26                         BLK. ENTERPRISES, LLC

27

28

Case No. BC692002

FIRST AMENDED COMPLAINT

# EXHIBIT A

## CONFIDENTIALITY
## AND NONDISCLOSURE AGREEMENT

THIS CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT ("Agreement") is made and entered into effective Mar 11, 2014 ("Effective Date") by and between UNIX PACKAGING, INC., a California corporation having its principal office at 9 Minson Way, Montebello, CA 90640, on the one hand (collectively "UNIX"), and Blk Enterprises LLC and its affiliates, subsidiaries, principals, owners, members, officers, directors, representatives and agents, having its principal office at 169 Ramapo Valley Rd Oakland NJ 07436 (collectively "Company"), on the other hand (individually "Party" and collectively "Parties").

WHEREAS, Unix and Company desire to discuss and/or enter into a business relationship, a business opportunity and/or acquisition transaction with each other ("Proposed Transaction"), pursuant to which each Party will disclose to the other or the other's affiliates, in connection with these discussions and the Proposed Transaction, certain information that each believes to be proprietary, sensitive and confidential, and neither Party is willing to proceed with these discussions unless they have an agreement restricting further disclosure or use of this information. For the purposes of this Agreement, the Party providing the Confidential Information (as defined in Section 1, below) shall be referred to as the "DISCLOSING PARTY" and the Party receiving such Confidential Information shall be referred to as the "RECIPIENT."

NOW, THEREFORE, in consideration of the mutual promises contained herein, the Parties agree as follows:

1. Definition of Confidential Information. The term "Confidential Information" shall include operating agreement and amendments, financial statements, tax returns, trade secrets, customer lists, vendor relationships, price lists, business information, including operations, planning, marketing strategies, and product lists, product ingredients, recipes and formulas and other financial, operational, technical, proprietary and/or confidential information, whether verbal or written, concerning or pertaining to DISCLOSING PARTY. Confidential Information shall not include, and the Parties agree that this Agreement is not intended to restrict the use or disclosure of, any portion of such information which: (a) is now or later made known to the public through no default by RECIPIENT of its obligations under this Agreement; (b) RECIPIENT can show was in its possession prior to the disclosure by the DISCLOSING PARTY; (c) is received by RECIPIENT from a third party provided RECIPIENT has no actual knowledge such third party is breaching an obligation of confidentiality to the DISCLOSING PARTY in providing such information to RECIPIENT; (d) is independently developed by RECIPIENT by persons who did not have access to Confidential Information of the DISCLOSING PARTY; (e) is disclosed by RECIPIENT after receipt of written permission from the DISCLOSING PARTY; (f) or is required to be disclosed by law, order or regulation of a governmental agency or court of competent jurisdiction.

2. Obligation of Confidentiality. RECIPIENT agrees, during and after the term of this Agreement, to hold in confidence and, except as provided herein, not publish or disclose to any third parties any of the DISCLOSING PARTY's Confidential Information without the prior written consent of the DISCLOSING PARTY. RECIPIENT agrees to use the same degree of care (and in any event not less than reasonable care) to safeguard the confidentiality of the Confidential Information that it uses to protect its own secret and/or confidential information. RECIPIENT agrees to limit any disclosure of the Confidential Information to those of its employees, directors, officers and outside professional advisors who have a need to know and to advise such persons of RECIPIENT's obligations under this Agreement. Notwithstanding anything in this Agreement to the contrary, each Party hereto agrees that any Party to this Agreement (and any person or entity to which Confidential Information is disclosed by a Party as permitted hereby) may (without limitation) disclose to its: (i) regulators; (ii) auditors; and (iii) persons or entities who need to know the tax treatment and tax structure of the transactions contemplated by this Agreement, and all materials of any kind (including opinions or other tax analyses) related to such tax treatment and tax structure. The Parties' obligations not to disclose or improperly use Confidential Information received during the Term will continue after this Agreement expires or is terminated. Early termination of this Agreement does not relieve the Recipient of its obligations in connection with the Confidential Information exchanged before the effective date of termination.

3. Use and Return of Confidential Information. RECIPIENT agrees to use Confidential Information received under this Agreement only (i) to evaluate its interest in pursuing the Proposed Transaction, and (ii) to pursue the Proposed Transaction. All Confidential Information generated and/or delivered to RECIPIENT and containing Confidential Information shall be the property of the DISCLOSING PARTY, and RECIPIENT shall deliver all such materials to the DISCLOSING PARTY (or in the case of electronic information to delete and/or destroy such materials) upon the written request of the DISCLOSING PARTY.

4. Required Disclosure. If RECIPIENT is requested or required by subpoena, court order, or similar process to disclose any Confidential Information, the Parties agree that RECIPIENT will, to the extent allowed by law, provide DISCLOSING PARTY with prompt written notice of such request(s) so that the DISCLOSING PARTY may seek an appropriate protective order and/or waive RECIPIENT's compliance with the provisions of this Agreement.

5. No License. Nothing contained herein shall be construed to grant to RECIPIENT any immunity or license under any intellectual property right of the DISCLOSING PARTY.

6. Term. This Agreement shall terminate on the earliest of (i) one (1) year from the Effective Date, or (ii) the date of earlier termination agreed to in writing and signed by the Parties or by the DISCLOSING PARTY and the RECIPIENT, or (iii) the date a definitive agreement relating to the Proposed Transaction is entered into by RECIPIENT or an affiliate of RECIPIENT and the DISCLOSING PARTY or its owners or affiliate(s). Notwithstanding the the foregoing, the Parties' obligations under Sections 2 and 3 (above) shall survive termination of this Agreement.

7. No Violation. Each Party represents that its compliance with the terms of this Agreement will not violate any duty which such Party may have to any other person or entity, including obligations concerning providing services to



others, confidentiality of proprietary information and assignment of inventions, ideas, patents or copyrights.

8.    General. (a) This Agreement shall not be assigned by either Party without the written consent of the other except in connection with the transfer of all, or substantially all, of the assets or business of such Party. Subject to the foregoing, this Agreement shall inure to the benefit of and be binding upon the successors and permitted assigns of the Parties; (b) This Agreement shall be construed and interpreted in accordance with the laws of the State of California, without regard to its principles concerning the application of laws of other jurisdictions. The Parties agree to exclusive jurisdiction and venue of Los Angeles County, and the prevailing Party in any action to enforce the terms and/or provisions of this Agreement shall be entitled to recover its attorney's fees and costs (including the costs of expert witnesses, if any) in connection therewith; (c) No waiver, alteration or cancellation of any of the provisions of this Agreement shall be binding unless made in writing and signed by the Party to be bound; (d) If any portion of this Agreement is held to be invalid or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect without the invalid or unenforceable provision(s); and (e) The Parties hereby represent and warrant that the officials signing this Agreement have the power to do so on behalf of the respective Parties.

9.    Consideration of Transaction. All Parties agree that neither RECIPIENT, DISCLOSING PARTY nor any affiliate of the Parties, by signing this Agreement, is committing to any binding agreement or commitment except for the terms of this Agreement. The Parties agree that if the Parties, after conducting their due diligence, elect to participate in the Proposed Transaction, they will only do so pursuant to a definitive agreement executed by both Parties. Nothing in this Agreement is intended or shall be construed as any binding commitment by either Party to enter into the Proposed Transaction.

10.    Non-Circumvention. In consideration of any disclosure of Confidential Information and any negotiations concerning the Proposed Transaction, RECIPIENT agrees and acknowledges that the Proposed Transaction is the Proposed Transaction of DISCLOSING PARTY and further agrees that for a period of two (2) years following the disclosure to RECIPIENT of the Proposed Transaction and other Confidential Information, neither RECIPIENT nor any other person or entity directed by him or any entity owned or controlled by him, including any affiliated entities, and their respective principals, members, officers, shareholders and agents will directly or indirectly pursue, divert and/or solicit, any Proposed Transaction or a portion thereof or in any manner disclose or discuss the Proposed Transaction with any third party other than DISCLOSING PARTY, or refer or pitch the Proposed Transaction to any third parties and further agree not to pursue, divert or solicit any contact or source introduced to RECIPIENT by DISCLOSING PARTY in connection with the Proposed Transaction.

11.    Breach of Agreement. The Parties acknowledge and agree that due to the unique nature of the Confidential Information, any breach of this Agreement would cause irreparable harm to DISCLOSING PARTY for which damages are not an adequate remedy and that DISCLOSING PARTY shall therefore be entitled to equitable relief in addition to all other remedies

available at law, including but not limited to damages resulting from any interference with prospective or actual economic advantage, lost profits, lost business and other commercial or economical loss. RECIPIENT waives any requirement for DISCLOSING PARTY to receive a bond in any such action. Each Party agrees to indemnify and hold the other Party and their respective affiliates and their successors and assigns harmless from any claim, action, liability, loss, damage or suit arising out of or in connection with a material breach of any provisions of this Agreement by the other Party

12.    Entire Agreement. This Agreement supersedes all prior oral or written agreements entered into by and between the Parties hereto which were in existence on or before the date that this Agreement was entered into. No Party has made any representations, warranties, covenants or promises relating to the subject matter of this Agreement except as otherwise set forth herein, and any prior agreements or understandings relating to such subject matter and not specifically set forth herein shall be of no force or effect. This Agreement constitutes the entire agreement of the parties relative to the subject matter hereof.

13.    WAIVER OF JURY TRIAL. EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY, VOLUNTARILY, KNOWINGLY AND IRREVOCABLY WAIVES ANY CONSTITUTIONAL OR OTHER RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN THE EVENT OF LITIGATION CONCERNING ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING UNDER THIS AGREEMENT, THE PARTIES' PERFORMANCE HEREUNDER OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR AND IN ANY CASE, WHETHER NOW OR HEREAFTER ARISING AND WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE. ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first written above.

UNIX PACKAGING, INC.

By_____
Name:
Title:

COMPANY

By_____
Name: Louise Wilkie
Title: Managing Director

# EXHIBIT B

# 一款迟到的进口黑水饮料空降中国正面PK加拿大BLK黑水

(Original) 2017-12-01 图图 进口食品老板经销商内参



你分得清这是**水**还是**可乐还是酒**吗？

▼▼▼▼▼





这个世界本是色彩斑斓，但不知从何时开始，人们开始喜欢黑色，喜欢它的单纯，喜欢它的干净，更喜欢它的简单。

**美国USA黑水的到来，引领了时尚炫酷的潮流。**在我们的认知中，水应该是透明无色的，奈何黑水的到来打破了人们固有的思维，让人眼前一亮，那么，这款USA黑水到底是什么呢？



**美国USA黑水中国区总代理徐剑峥徐总告诉我们之所以引进USA黑水，最主要的还是黑水高质量的品质，产品背后体现的是健康的生活方式。**这款黑水选自美国长毛象山脉冰川融水，含有天然的矿物质和电解质，不含糖分，碳水化合物以及热量，同时，60种以上的微量元素呈现离子状态，能够快速地被人体所吸收，这也使得USA黑水成了**一款健康的功能性饮料**，在这个人人追求健康的时代，USA黑水的出击正中下怀，怪不得USA黑水能在这么短时间内成为爆品。

Case 2:18-cv-02151-SVW-KS　 Document 1-2　 Filed 03/14/18　 Page 42 of 69　 Page ID #:48



在这个追求"颜值"的时代，外表显得格外重要，内外兼修方能成功。正好，大家要的USA黑水都有，**USA黑水除了本身自带健康属性外，在包装设计上，也是独树一帜的**。全黑的包装夺人眼球，白色简单的USA标志和黑色炫酷的底色完美融合使得这款产品展现**炫酷的气质**，瓶身上白色的英文标识和中国传统文化相对视，国际范迎面而来。一个具有气质的产品，又怎能不被大家喜欢？



向右滑动查看下一张

据徐总介绍，目前这款USA黑水主要是在京东全球购线上销售，但我们发现，单渠道的销售并没有阻挡产品的发展，相反，这反而为USA黑水的独特性增添了一笔亮丽的色彩。因为独特所以专一。当然，USA黑水的发展不会止步，**徐总说道："我们正在申请其它跨境贸平台，像网易考拉和天猫国际等等平台，之后都会有一系列合作展开。"**



每一款好的产品都不会原地踏步，不管是在产品的包装设计上，还是在销售渠道上，永远会有新的改变和蜕变。**USA黑水作为一款新锐的产品，想必一定会永远坚持初心，继续提倡品质生活。在保证品质的基础上进行多方位的创新和发展。**这也是新时代下任何一款产品想要发展就必须要经历和坚持的事情。



加拿大BLK黑水早进入中国，而美国USA黑水作为迟到者，目前在电商平台中，两者价格相仿，究竟谁能在中国市场更胜一筹？让我们拭目以待！

**这些微信号，进口食品人都在看**

**长按二维码即可关注**

**进口食品老板经销商内参**

Case 2:18-cv-02151-SVW-KS   Document 1-2   Filed 03/14/18   Page 46 of 69   Page ID #:52

**20万进口食品行业人都在关注！**

**中食产经网**

**关注食品行业发展风向标，洞察食品产业经济新动态。**

**食品安全观察员**

**观察食品安全和经济，播报"真材食料"**

**飞象108**

**做传统企业家新零售转型路上的陪伴者！**

**食品展会大全**

**食品展会最全最新信息发布平台**

投稿&商务合作请至

**346359332@qq.com**

**进口食品老板经销商内参**

GIF环球进口食品诚食会

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Ryan E. Hatch (SBN 235577)<br>Law Office of Ryan E. Hatch, PC<br>13323 Washington Blvd., Suite 100<br>Los Angeles, CA 90066<br>TELEPHONE NO.: 310-279-5076    FAX NO.: 310-693-5328<br>ATTORNEY FOR (Name): BLK. Enterprises, LLC | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>FEB 09 2018<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By _____ Deputy<br>Anastasia Zoe Miro |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90066
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
BLK. Enterprises, LLC v. UNIX Packaging, Inc., Phoebe Xu, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000)    [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC692002<br><br>JUDGE:<br><br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[✓] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties
  b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
  c. [ ] Substantial amount of documentary evidence
  d. [ ] Large number of witnesses
  e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
  f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive

4. Number of causes of action (specify): Ten, for Misappropriation of Trade Secret, Breach of Contract, and others

5. This case [ ] is [✓] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: February 09, 2018

Ryan E. Hatch
_____  ▶  _____
(TYPE OR PRINT NAME)           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

12:49:35 2018-02-09

To: 13106935328    From: (14422473714)    02/13/18 03:55 PM    Page 4 of 5

To:    Page 6 of 56    Case 2:18-cv-02151-SVW-KS    Document 1-2    Filed 03/14/18    Page 51 of 69    Page ID #:57
2018-02-09 19:51:23 (GMT)    13106935326 From: Ryan Hatch

| SHORT TITLE: BLK Enterprises, LLC v. UNIX Packaging, Inc., Phoebe Xu et al. | CASE NUMBER: BC692002 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases — unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos – Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

12:49:35 2018-02-09

Opt-Out: Not Defined

| SHORT TITLE: BLK. Enterprises, LLC v. UNIX Packaging, Inc., Phoebe Xu et al. | CASE NUMBER BC692002 |
| --- | --- |

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
| --- | --- | --- | --- |
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, (5) |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute (not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation  Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer- Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: BLK. Enterprises, LLC v. UNIX Packaging, Inc., Phoebe Xu et al. | CASE NUMBER: BC692002 |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

| SHORT TITLE: BLK. Enterprises, LLC v. UNIX Packaging, Inc., Phoebe Xu et al. | CASE NUMBER BC692002 |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| □ 1. □ 2. □ 3. □ 4. ☑ 5. □ 6. □ 7. □ 8. □ 9. □ 10. □ 11. | 9 Minson Way |

| CITY: Montebello | STATE: CA | ZIP CODE: 90640 |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ____Central____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: February 09, 2018

_(signature)_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE - IC

Case Number _____ **BC 6 0 3 0 0 2**

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

**Your case is assigned for all purposes to the judicial officer indicated below.**

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Debre K. Weintraub | 1 | 534 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Deirdre Hill | 49 | 509 |
| Hon. Terry A. Green | 14 | 300 | Hon. Teresa A. Beaudet | 50 | 508 |
| Hon. Richard Fruin | 15 | 307 | Hon. Michael J. Raphael | 51 | 511 |
| Hon. Rita Miller | 16 | 306 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Howard L. Halm | 53 | 513 |
| Hon. Stephanie Bowick | 19 | 311 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Dalila Corral Lyons | 20 | 310 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Michael Johnson | 56 | 514 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. John P. Doyle | 58 | 516 |
| Hon. Barbara Scheper | 30 | 400 | Hon. Gregory Keosian | 61 | 732 |
| Hon. Samantha Jessner | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Daniel S. Murphy | 32 | 406 | Hon. Mark Mooney | 68 | 617 |
| Hon. Michael P. Linfield | 34 | 408 | Hon. William F. Fahey | 69 | 621 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Monica Bachner | 71 | 729 |
| Hon. Marc Marmaro | 37 | 413 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. Rafael Ongkeko | 73 | 733 |
| Hon. Elizabeth Feffer | 39 | 415 | Hon. Michelle Williams Court | 74 | 735 |
| Hon. David Sotelo | 40 | 414 | Hon. Gail Ruderman Feuer | 78 | 730 |
| Hon. Holly E. Kendig | 42 | 416 | | | |
| Hon. Mel Red Recana | (45) | 529 | | | |
| Hon. Frederick C. Shaller | 46 | 500 | | | |
| Hon. Randolph Hammock | 47 | 507 | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on    **FEB 0 5 2018**
                                                                    (Date)

SHERRI R. CARTER, Executive Officer/Clerk of Court

By _____ **RICARDO PEREZ** _____, Deputy Clerk

LACIV 190 (Rev 12/17)        **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

## NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

| TELEPHONE NO.: | FAX NO. (Optional): |
|---|---|
| E-MAIL ADDRESS (Optional): | |
| ATTORNEY FOR (Name): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

  iii. Be filed within two (2) court days of receipt of the Request; and

  iv. Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

 c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

 d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

 e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

  It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:            FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional) | | |
| ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS

PLAINTIFF

DEFENDANT.

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
   (INSERT DATE)                                      (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at **www.lacourt.org** under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:
_____         _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR PLAINTIFF)

Date:
_____         _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR DEFENDANT)

Date:
_____         _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR DEFENDANT)

Date:
_____         _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR DEFENDANT)

Date:
_____         _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR _____)

Date:
_____         _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR _____)

Date:
_____         _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):    FAX NO, (Optional).
ATTORNEY FOR (Name)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS

PLAINTIFF.

DEFENDANT

| INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER |
|---|---|

1. This document relates to:

   ☐    Request for Informal Discovery Conference
   ☐    Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request)

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a **Request for Informal Discovery Conference**, **briefly** describe the nature of the discovery dispute, **including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference**, **briefly** describe why the Court should deny the requested discovery, **including the facts and legal arguments at issue.**

## INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.
E-MAIL ADDRESS (Optional)
ATTORNEY FOR (Name)

FAX NO. (Optional)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS

PLAINTIFF

DEFENDANT:

| STIPULATION AND ORDER — MOTIONS IN LIMINE | CASE NUMBER |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE. | CASE NUMBER. |
|---|---|
| | |

## The following parties stipulate:

Date: _____

⟩ _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR PLAINTIFF)

Date: _____

⟩ _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR DEFENDANT)

Date: _____

⟩ _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR DEFENDANT)

Date: _____

⟩ _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR _____)

Date: _____

⟩ _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

# Superior Court of California
# County of Los Angeles



# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKET

**The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross-complainants must serve the ADR Information Packet on any new parties named to the action together with the cross-complaint.**

**There are a number of ways to resolve civil disputes without having to sue someone. These alternatives to a lawsuit are known as alternative dispute resolution (ADR).**

**In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediations, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help resolve disputes without having to go to court.**

**Advantages of ADR**

- Often faster than going to trial
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to remedy.
- There are fewer, if any, court appearances. Because ADR can be faster and save money, it can reduce stress.

**Disadvantages of ADR - ADR may not be suitable for every dispute.**

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

**The Most Common Types of ADR**

- **Mediation**

  In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the parties, rather than the mediator, decide how the dispute is to be resolved.

  - **Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation is also very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to express their feelings and find out how the other sees things.**

  - **Mediation may not be effective when one party is unwilling to cooperate or compromise or when one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.**

- **Arbitration**

  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed. Arbitration may be either "binding" or "non-binding." Binding arbitration means the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.

  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

- **Mandatory Settlement Conference (MSC)**

  Settlement Conferences are appropriate in any case where settlement is an option. Mandatory Settlement Conferences are ordered by the Court and are often held near the date a case is set for trial. The parties and their attorneys meet with a judge who devotes his or her time exclusively to preside over the MSC. The judge does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.

  The Los Angeles Superior Court Mandatory Settlement Conference (MSC) program is free of charge and staffed by experienced sitting civil judges who devote their time exclusively to presiding over MSCs. The judges participating in the judicial MSC program and their locations are identified in the List of Settlement Officers found on the Los Angeles Superior Court website at http://www.lacourt.org/. This program is available in general jurisdiction cases with represented parties from independent calendar (IC) and Central Civil West (CCW) courtrooms. In addition, on an ad hoc basis, personal injury cases may be referred to the program on the eve of trial by the personal injury master calendar courts in the Stanley Mosk Courthouse or the asbestos calendar court in CCW.

  In order to access the Los Angeles Superior Court MSC Program the judge in the IC courtroom, the CCW Courtroom or the personal injury master calendar courtroom must refer the parties to the program.  Further, all parties must complete the information requested in the Settlement Conference Intake Form and email the completed form to mscdept18@lacourt.org.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

## Additional Information

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;
- Contact the local bar association (http://www.lacba.org/) or;
- Look in a telephone directory or search online for "mediators; or "arbitrators."

There may be a charge for services provided by private arbitrators and mediators.

A list of approved State Bar Approved Mandatory Fee Arbitration programs is available at http://calbar.ca.gov/Attorneys/MemberServices/FeeArbitration/ApprovedPrograms.aspx#19

To request information about, or assistance with, dispute resolution, call the number listed below. Or you may call a Contract Provider agency directly. A list of current Contract Provider agencies in Los Angeles County is available at the link below.

http://css.lacounty.gov/programs/dispute-resolution-program-drp/

**County of Los Angeles Dispute Resolution Program**
**3175 West 6th Street, Room 406**
**Los Angeles, CA 90020-1798**
**TEL: (213) 738-2621**
**FAX: (213) 386-3995**

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221