IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BLK. ENTERPRISES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Case No. 2:18-cv-02151-SVW-KS |
| | ) | |
| UNIX PACKAGING, INC. *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| UNIX PACKAGING, INC., | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BLK. ENTERPRISES, LLC, | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| | ) | |
| | ) | |

**JURY INSTRUCTIONS**

DATED: _____

_____

HON. STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

# I.

# AGREED UPON INSTRUCTIONS

**INSTRUCTION NO. 4402**
**MISAPPROPRIATION OF TRADE SECRETS**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**TRADE SECRET DEFINED**

To prove that any of its information and methods were trade secrets at the time of misappropriation, BLK must prove all of the following:

1. That the information or methods were secret;
2. That the information or methods had actual or potential independent economic value because they were secret; and
3. That BLK made reasonable efforts to keep the information or methods secret.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority:</u>**
CACI 4402 (2017).

**INSTRUCTION NO. 4403**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**SECRECY REQUIREMENT**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in BLK's use of the trade secret as long as they are instructed to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**Authority:**

18 U.S.C. §§ 1836, 1839; CACI 4403 (2017); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) ("[T]he California Uniform Trade Secrets Act and the federal Defend Trade Secrets Act[] . . . offer essentially the same definitions for our purposes."); *Blue Star Land Servs., LLC v. Coleman*, No. CIV-17-931-R, 2017 WL 6210901, at *5 (W.D. Okla. Dec. 8, 2017) (discussing DTSA and stating that "[a]lthough the law requires secrecy, it need not be absolute").

## INSTRUCTION NO. 4404
## MISAPPROPRIATION OF TRADE SECRETS
## (FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)
## (CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)

### REASONABLE EFFORTS TO PROTECT SECRECY

To establish that the information and methods concerning the BLK product are trade secrets, BLK must prove that it made reasonable efforts under the circumstances to keep it secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as BLK, exercising due care to protect important information of the same kind. This requirement applies separately to each item that BLK claims to be a trade secret.

In determining whether or not BLK made reasonable efforts to keep the information and methods secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

(a) Whether documents or computer files containing the methods and information were marked with confidentiality warnings;

(b) Whether BLK instructed its employees to treat the methods and information as confidential;

(c) Whether BLK restricted access to the methods and information to persons who had a business reason to know the information;

(d) Whether BLK kept the methods and information in a restricted or secured area;

(e) Whether BLK required employees or others with access to the methods or information to sign confidentiality or nondisclosure agreements;

(f) Whether BLK took any action to protect the specific methods and information, or whether it relied on general measures taken to protect its business information or assets;

(g) The extent to which any general measures taken by BLK would prevent the unauthorized disclosure of the methods and information;

(h) Whether there were other reasonable measures available to BLK that it did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**Authority:**

18 U.S.C. §§ 1836, 1839; CACI 4404 (2017); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) ("[T]he California Uniform Trade Secrets Act and the federal Defend Trade Secrets Act[] . . . offer essentially the same definitions for our purposes."); *Blue Star Land Servs., LLC v. Coleman*, No. CIV-17-931-R, 2017 WL 6210901, at *5 (W.D. Okla. Dec. 8, 2017) (discussing DTSA and stating that "[a]lthough the law requires secrecy, it need not be absolute").

## INSTRUCTION NO. 4409
## MISAPPROPRIATION OF TRADE SECRETS
## (FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)
## (CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)

## REMEDIES FOR MISAPPROPIATION OF TRADE SECRET

If BLK proves that a Defendant misappropriated its trade secrets, then BLK is entitled to recover damages if the misappropriation caused BLK to suffer an actual loss.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____ <br> Stephen V. Wilson <br> Judge of the United States District Court <br> Central District of California |

**Authority:**

18 U.S.C. § 1836(b)(3)(B); CACI 4409 (2017); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) ("[T]he California Uniform Trade Secrets Act and the federal Defend Trade Secrets Act[] . . . offer essentially the same definitions for our purposes.").

## INSTRUCTION NO. 4412
## MISAPPROPRIATION OF TRADE SECRETS
## (FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)
## (CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)

### "INDEPENDENT ECONOMIC VALUE" EXPLAINED

BLK's methods and information have independent economic value if they give the owner an actual or potential business advantage over others who do not know the methods and information and who could obtain economic value from its disclosure or use. In determining whether any of the methods and information had actual or potential independent economic value because it was secret, you may consider the following:

(a) The extent to which BLK obtained or could obtain economic value from the methods or information in keeping them secret;

(b) The extent to which others could obtain economic value from the methods or information if they were not secret;

(c) The amount of time, money, or labor that BLK expended in developing the methods or information;

(d) The amount of time, money, or labor that would be or was saved by a competitor who used the methods or information.

The presence or absence of any one or more of these factors is not necessarily determinative.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**Authority:**

18 U.S.C. §§ 1836, 1839; CACI 4412 (2017); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) ("[T]he California Uniform Trade Secrets Act and the federal Defend Trade Secrets Act[] . . . offer essentially the same definitions for our purposes.").

**INSTRUCTION NO. 15.3**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW**

**DEFINITION—TRADE DRESS**

Trade dress is the non-functional physical detail and design of a product or its packaging, which indicates or identifies the product's source and distinguishes it from the products of others.

Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics. In other words, trade dress is the form in which a person presents a product or service to the market, its manner of display.

A person who uses the trade dress of another may be liable for damages.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority:</u>**

Ninth Circuit Manual of Model Civil Jury Instructions (2017 edition, updated Sept. 2018) § 15.3.

INSTRUCTION NO. 15.12
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW**

**INFRINGEMENT—ELEMENTS—VALIDITY—TRADE DRESS—NON-FUNCTIONALITY REQUIREMENT**

A product feature is functional if it is essential to the product's use or purpose, or if it affects the product's cost or quality. It is non-functional if its shape or form makes no contribution to the product's function or operation. If the feature is part of the actual benefit that consumers wish to purchase when they buy the product, the feature is functional. However, if the feature serves no purpose other than as an assurance that a particular entity made, sponsored or endorsed the product, it is non-functional.

To determine whether a product's particular shape or form is functional, you should consider whether the design as a whole is functional, that is whether the whole collection of elements making up the design or form are essential to the product's use or purpose.
You should assess the following factors in deciding if the product feature is functional or non-functional:

(1) The Design's Utilitarian Advantage. In considering this factor, you may examine whether the particular design or product feature yields a utilitarian advantage over how the product might be without that particular design or product feature. If there is a utilitarian advantage from having the particular design or feature, this would weigh in favor of finding the design or feature is functional; if it seems merely ornamental, incidental, or arbitrary, it is more likely to be nonfunctional.

(2) Availability of Alternate Designs. In considering this factor, you may examine whether an alternate design could have been used, so that competition in the market for that type of product would not be hindered by allowing only one person to exclusively use the particular design or configuration. For this to be answered in the affirmative, the alternatives must be more than merely theoretical or speculative. They must be commercially feasible. The unavailability of a sufficient number of alternate designs weighs in favor of finding the design or feature is functional.

(3) Advertising Utilitarian Advantage in the Design. In considering this factor, you may examine whether the particular design or configuration has been touted in any advertising as a utilitarian advantage, explicitly or implicitly. If a seller advertises the utilitarian advantages of a particular feature or design, this weighs in favor of finding that design or feature is functional.

(4) The Design's Method of Manufacture. In considering this factor, you may examine whether the particular design or feature result from a relatively simple or inexpensive method of manufacture. If the design or feature is a result of a particularly economical production method, this weighs in favor of finding the design or feature is functional; if the feature is essential to the use or purpose of the device or affects its cost or quality, it is more likely functional.

BLK has the burden of proving non-functionality by a preponderance of the evidence in order to show that the design of the product or packaging of BLK water is valid trade dress and protected from infringement.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority:</u>**

Ninth Circuit Manual of Model Civil Jury Instructions (2017 edition, updated Sept. 2018) § 15.12
(modified).

**INSTRUCTION NO. 2100**
**CONVERSION**

**ESSENTIAL FACTUAL ELEMENTS**

BLK claims that Unix wrongfully exercises control over BLK's personal property.  To establish this claim, Unix must prove all of the following:

1. That BLK had a right to possess the pallets of raw fulvic minerals, packing and labeling materials, and bottles of BLK water;

2.  That Unix substantially interfered with BLK's property by knowingly and intentionally preventing BLK from having access to the property, or destroying the property, or refusing to return the property after BLK demanded its return;

3.  That BLK did not consent;

4.  That BLK was harmed; and

5.  Unix's conduct was a substantial factor in causing BLK's harm.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 2100.

**INSTRUCTION NO. 300-1**
**BREACH OF CONTRACT**


**INTRODUCTION**


Unix claims that it and BLK entered into contracts for the bottling and co-packing of BLK's beverage products in exchange for payment to Unix.


Unix claims that BLK breached this contract by failing to pay invoices from Unix for services rendered.


Unix also claims that BLK's breach of this contract caused harm to Unix for which BLK should pay.


BLK denies Unix's breach of contract claim and contends it was not required to pay Unix because Unix did not perform as requested.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 300

**INSTRUCTION NO. 300-2**
**BREACH OF CONTRACT**

**INTRODUCTION**

BLK claims that BLK and Unix entered into a Non-Disclosure Agreement with BLK, under which Unix was prevented from disclosing information about the manufacture of BLK's BLK water to another third party or using it for other customers.

BLK claims that Unix breached the Non-Disclosure Agreement by disclosing information about BLK's BLK water to Xu, and using BLK's information in manufacturing the USA Water for Xu.

BLK also claims that Unix's breach of the Non-Disclosure Agreement caused harm to BLK for which Unix should pay.

Unix denies that it breached the Non-Disclosure Agreement.  Unix also claims that there was no meeting of the minds as to the scope of the non-circumvention clause and that any information disclosed by Unix was available through other means.

| GIVEN: | | |
|---|---|---|
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 300.

**INSTRUCTION NO. 300-3**
**BREACH OF CONTRACT**


**INTRODUCTION**


BLK claims that BLK and Unix entered into a contract to manufacture and bottle BLK's product, under which Unix was to manufacture and bottle BLK's product according to the specifications provided by BLK.


BLK claims that Unix breached the manufacturing and bottling agreement by failing to manufacture and bottle BLK's product according to BLK's specifications.


BLK also claims that Unix's breach of the manufacturing and bottling agreement caused harm to BLK for which Unix should pay.


Unix denies that a manufacturing and bottling agreement exists, and also claims that BLK and Unix never agreed about the product specifications, that Unix followed BLK's instructions in the manufacturing and bottling of the product, and that BLK gave up its right to have Unix perform its obligations.  Unix also contends that BLK failed to pay for Unix's services, that BLK failed to mitigate its damages or was not damaged in any way by Unix's conduct.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 300.

**INSTRUCTION NO. 302**
**BREACH OF CONTRACT**

**CONTRACT FORMATION—ESSENTIAL FACTUAL ELEMENTS**

BLK claims that the parties entered into an agreement for Unix to bottle and manufacture BLK's product. To prove that a contract was created, BLK must prove all of the following:

1. That the contract terms were clear enough that the parties could understand what each was required to do;

2. That the parties agreed to give each other something of value (a promise to do something or not to do something may have value); and

3. That the parties agreed to the terms of the contract.

When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. You may not consider the parties' hidden intentions.

If BLK did not prove all of the above, then a contract was not created.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | |
| | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**

CACI 302.

**INSTRUCTION NO. 303-1**
**BREACH OF CONTRACT**

**ESSENTIAL FACTUAL ELEMENTS**

To recover damages from Unix for breach of the contract, BLK must prove all of the following:

1. That BLK and Unix entered into a contract;

2. That BLK did all, or substantially all, of the significant things that the contract required it to do;

3. That Unix did something that the contract prohibited;

4. That BLK was harmed; and

5. That Unix's breach of contract was a substantial factor in causing BLK's harm.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 303.

**INSTRUCTION NO. 303-2**
**BREACH OF CONTRACT**

**ESSENTIAL FACTUAL ELEMENTS**

To recover damages from BLK for breach of the contract, Unix must prove all of the following:

1. That BLK and Unix entered into a contract;

2. That Unix did all, or substantially all, of the significant things that the contract required it to do;

3. That BLK failed to do something that the contract required it to do;

4. That Unix was harmed; and

5. That BLK's breach of contract was a substantial factor in causing Unix's harm.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 303

# INSTRUCTION NO. 314
# BREACH OF CONTRACT

## INTERPRETATION—DISPUTED WORDS

BLK and Unix dispute the meaning of the following words in their contract:

> Non-Circumvention.  In consideration of any disclosure of Confidential Information and any negotiations concerning the Proposed Transaction, RECIPIENT agrees and acknowledges that the Proposed Transaction is the Proposed Transaction of DISCLOSING PARTY and further agrees that for a period of two (2) years following the disclosure to RECIPIENT of the Proposed Transaction and other Confidential Information, neither RECIPIENT nor any other person or entity directed by him or any entity owned or controlled by him, including any affiliated entities, and their respective principals, members, officers, shareholders and agents will directly or indirectly pursue, divert and/or solicit any Proposed Transaction or a portion thereof or in any manner disclose or discuss the Proposed Transaction with any third party other than DISCLOSING PARTY, or refer or pitch the Proposed Transaction to any third parties and further agree not to pursue, divert or solicit any contract or source introduced to RECIPIENT by DISCLOSING PARTY in connection with the Proposed Transaction.

BLK claims that the words in the Non-Circumvention clause in the NDA created an exclusivity clause such that Unix was not able to bottle Xu's product. Unix claims that the words in the Non-Circumvention clause in the NDA do not prevent Unix from bottling Xu's product, and if it did, the restriction expired 2 years after the execution of the NDA.  BLK must prove that its interpretation is correct.

In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 314.

**INSTRUCTION NO. 315**
**BREACH OF CONTRACT**

**INTERPRETATION—MEANING OF ORDINARY WORDS**

You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have special meaning.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 315.

**INSTRUCTION NO. 316**
**BREACH OF CONTRACT**

**INTERPRETATION—MEANING OF TECHNICAL WORDS**

You should assume that the parties intended the technical words used in their contract to have the Meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a difference sense.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 316.

**INSTRUCTION NO. 317**
**BREACH OF CONTRACT**

**INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE**

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts.  You should use each part to help you interpret the others, so that all parts make sense when taken together.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 317.

**INSTRUCTION NO. 318**
**BREACH OF CONTRACT**

**INTERPRETATION—CONSTRUCTION BY CONDUCT**

In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | |
| | | _____ <br> Stephen V. Wilson <br> Judge of the United States District Court <br> Central District of California |

**<u>Authority</u>**
CACI 318.

**INSTRUCTION NO. 336**
**BREACH OF CONTRACT**

**AFFIRMATIVE DEFENSE—WAIVER**

Unix claims that it adequately performed under a contract because BLK gave up its right to have Unix perform these obligations.  This is called a "waiver."

To succeed, Unix must prove both of the following by clear and convincing evidence:

1.  That BLK knew Unix was required to manufacture and bottle BLK's product according to BLK's specifications; and

2.  That BLK freely and knowingly gave up its right to have Unix perform these obligations.

A waiver may be oral or written or may arise from conduct that shows that BLK gave up that right.

If Unix proves that BLK gave up its right to Unix's performance of the manufacturing and bottling of BLK's product, then Unix was not required to perform these obligations.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 336.

**INSTRUCTION NO. 353**
**BREACH OF CONTRACT**

**LOSS OF PROFITS—SOME PROFITS EARNED**

To recover damages for lost profits, BLK must prove that it is reasonably certain it would have earned more profits but for Unix's breach of the contract.

To decide the amount of damages for lost profits, you must:

1. First, calculate BLK's estimated total profit by determining the gross amount it would have received if the contract had been performed, and then subtracting from that

amount the costs (including the value of the labor / materials / expenses) that BLK would have had if the contract had been performed;

2. Next, calculate BLK's actual profit by determining the gross amount it actually received, and then subtracting from that amount BLK's actual costs (including the value of the labor / materials / expenses); and

3. Then, subtract BLK's actual profit, which you determined in the second step, from its estimated total profit, which you determined in the first step. The resulting amount is BLK's lost profit.

You do not have to calculate the amount of the lost profits with mathematical precision, but there must be a reasonable basis for computing the loss.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | |
| | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 353.

**INSTRUCTION NO. 358**
**BREACH OF CONTRACT**

**MITIGATION OF DAMAGES**

If Unix breached the contract and the breach caused harm, BLK is not entitled to recover damages for harm that Unix proves BLK could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of BLK's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

If BLK made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 358.

**INSTRUCTION NO. 359**
**BREACH OF CONTRACT**

**PRESENT CASH VALUE OF FUTURE DAMAGES**

To recover for future harm, BLK must prove that the harm is reasonably certain to occur and must prove the amount of those future damages. The amount of damages for future harm must be reduced to present cash value. This is necessary because money received now will, through investment, grow to a larger amount in the future.

Unix must prove the amount by which future damages should be reduced to present value.

To find present cash value, you must determine the amount of money that, if reasonably invested today, will provide BLK with the amount of its future damages.

You may consider expert testimony in determining the present cash value of future damages.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 359.

**INSTRUCTION NO. 361**
**BREACH OF CONTRACT**

**RELIANCE DAMAGES**

If you decide that Unix breached a contract, BLK may recover the reasonable amount of money that it spent in preparing for contract performance. These amounts are called "reliance damages." BLK must prove the amount that it was induced to spend in reliance on the contract. If BLK proves reliance damages, Unix may avoid paying some or all of those damages by proving:

1. That some or all of the money that BLK spent in reliance was unnecessary;

   or

2. That BLK would have suffered a loss even if Unix had fully performed its obligations under the manufacturing and bottling agreement.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 361.

**INSTRUCTION NO. 400**
**NEGLIGENCE**

**ESSENTIAL FACTUAL ELEMENTS**

BLK claims that it was harmed by Unix's negligence. To establish this claim, BLK must prove all of the following:

1. That Unix was negligent;

2. That BLK was harmed; and

3. That Unix's negligence was a substantial factor in causing BLK's harm.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 400.

**INSTRUCTION NO. 401**
**NEGLIGENCE**

**BASIC STANDARD OF CARE**

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person can be negligent by acting or by failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

You must decide how a reasonably careful person would have acted in Unix and BLK's situation.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 401.

## INSTRUCTION NO. 405
## NEGLIGENCE

## COMPARATIVE FAULT OF PLAINTIFF

Unix claims that BLK's own negligence contributed to its harm. To succeed on this claim, Unix must prove both of the following:

1. That BLK was negligent; and

2. That BLK's negligence was a substantial factor in causing its harm.

If Unix proves the above, BLK's damages are reduced by your determination of the percentage of BLK's responsibility. I will calculate the actual reduction.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 405.

INSTRUCTION NO. 406
NEGLIGENCE

APPORTIONMENT OF RESPONSIBILITY

Unix claims that the negligence of Blind Industries and Services of Maryland ("BISM"), f/k/a Shoregood, Arcadia Supplements, Fulvic Xcell, and/or the shipping companies used by BLK, also contributed to BLK's harm. To succeed on this claim, Unix must prove both of the following:

   1. That BISM, Arcadia Supplements, Fulvic Xcell, and/or the shipping companies used by BLK were negligent; and

   2. That the negligence of these companies was a substantial factor in causing BLK's harm.

If you find that the negligence of more than one person including BLK, BISM, Arcadia Supplements, Fulvic Xcell, the shipping companies used by BLK, and/or Unix was a substantial factor in causing BLK's harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. The percentages must total 100 percent.

You will make a separate finding of BLK's total damages, if any. In determining an amount of damages, you should not consider any person's assigned percentage of responsibility.

"Person" can mean an individual or a business entity.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**

CACI 406.

**INSTRUCTION NO. 413**
**NEGLIGENCE**

**CUSTOM OR PRACTICE**

You may consider customs or practices in the community in deciding whether BLK and/or Unix acted reasonably.  Customs and practices do not necessarily determine what a reasonable person would have done in BLK and/or Unix's situation.  They are only factors for you to consider.

Following a custom or practice does not excuse conduct that is unreasonable.  You should consider whether the custom or practice itself is reasonable.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**

CACI 413.

**INSTRUCTION NO. 430**
**NEGLIGENCE**

**CAUSATION:  SUBSTANTIAL FACTOR**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 430.

## INSTRUCTION NO. 3934

## DAMAGES ON MULIPLE LEGAL THEORIES

BLK seeks damages from Unix under more than one legal theory.  However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

You will be asked to decide whether Unix is liable to BLK under the following legal theories:

1. Misappropriation of Trade Secrets Under the Federal Uniform Trade Secrets Act
2. Misappropriation of Trade Secrets Under the California Uniform Trade Secrets Act
3. Trade Dress Infringement
4. Conversion
5. Breach of Non-Disclosure Agreement
6. Breach of Manufacturing and Bottling Agreement
7. Negligence

The following items of damages are recoverable only once under all of the above legal theories:

1. Lost profits;
2. Loss in business value;
3. Out-of-pocket and itemized costs; and
4. Punitive damages.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 3934.

## INSTRUCTION NO. 3960
## COMPARATIVE FAULT OF PLAINTIFF—GENERAL VERDICT

If you decide that BLK's negligence combined with Unix's negligence in causing BLK's harm, then you must decide the percentage of responsibility for the harm that you attribute to each of them.

First, decide the total amount of BLK's damages. Then decide the percentage of responsibility that BLK and Unix have for the damages. Then reduce the total damages by the percentage of responsibility that you attribute to Unix.

After you make these calculations, state the reduced damage award in your verdict.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority:</u>**

CACI No. 3960.

## INSTRUCTION NO. 3964

## JURORS NOT TO CONSIDER ATTORNEY FEES AND COURT COSTS

You must not consider, or include as part of any award, attorney fees or expenses that the parties incurred in bringing or defending this lawsuit.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**Authority**
CACI 3964.

4814-9566-8600, v. 4

# II.

# INSTRUCTIONS PROPOUNDED BY PLAINTIFF, OPPOSED BY DEFENDANTS

## INSTRUCTION NO. 1.5A
## CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff BLK. Enterprises, LLC ("BLK") claims that the defendant and counter-claimant Unix Packaging, Inc. ("Unix") misappropriated BLK's trade secrets and infringed BLK's trade dress.  BLK also claims that Unix converted BLK's property, breached a Non-Disclosure Agreement, and breached an agreement to manufacture and bottle BLK's product.  BLK claims that Defendant Unix was negligent in its manufacturing and bottling of BLK's product.  The plaintiff, BLK, has the burden of proving these claims.

Unix denies BLK's claims and also contends that it is not liable to BLK because BLK did not bring its claim for negligence within the time period allowed by law.  Unix contends it is not liable to BLK because BLK consented to Unix's conduct and waived its right to object to Unix's conduct.  Unix contends that BLK failed to mitigate its damages or that things or persons other than Unix caused BLK's harm.  Unix has the burden of proof on these affirmative defenses.

Unix also contends that BLK failed to pay Unix for its services and reimburse it for certain expenses it incurred in manufacturing BLK's product.  Unix has the burden of proof on this counter claim.

BLK contends that it is not liable to Unix to pay for the outstanding invoices because Unix's own wrongful conduct resulted in harm to BLK that exceeds the amount of those invoices.  BLK also contends that Unix failed to disclose material facts about the parties' agreement, and that Unix did not mitigate its damages.  BLK has the burden of proof on these affirmative defenses.

Plaintiff BLK also contends that another defendant, Phoebe Xu ("Xu"), misappropriated BLK's trade secrets and infringed BLK's trade dress.  BLK has the burden of proving these claims.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority</u>**

Ninth Circuit Manual of Model Civil Jury Instructions (2017 edition, updated Sept. 2018) § 1.5.

**Defendants' Objections**

Ms. Xu does not object to this instruction.

**Unix's Objections To BLK's Ninth Circuit Manual of Model Jury Instructions § 1.5:**
Unix objects to BLK's version of the parties' claims and defenses as overly complicated and instead submits its own version of this instruction, which is more straightforward.

**Unix's Proposed Alternative Instruction follows on next page**

**INSTRUCTION NO. 1.5 (Alternate)**
**CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff BLK Enterprises, LLC ("BLK") asserts claims for misappropriation of trade secrets under federal and California law, trade dress infringement under federal and California law, and unfair competition against defendants Unix Packaging, Inc. ("Unix") and Phoebe Xu ("Xu"), jointly and severally. With respect to Unix, plaintiff also asserts claims for conversion, breach of non-disclosure agreement, breach of contract, and negligence.

Plaintiff BLK has the burden of proving all of these claims.

The defendants deny BLK's claims and assert various affirmative defenses.  The defendants have the burden of proof on their affirmative defenses.

In addition, Unix also contends that BLK breached an agreement between Unix and BLK, which was created by multiple invoices. BLK denies Unix's counterclaim.  Unix has the burden of proof on its counterclaim

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

## INSTRUCTION NO. 4400A
## MISAPPROPRIATION OF TRADE SECRETS
## (FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)
## (CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)

### INTRODUCTION

BLK claims that it is the owner of the following information and methods relating to BLK water, including, but not limited to:

(a) its proprietary fulvic mineral material formulations;
(b) product specifications;
(c) instructions on obtaining the alkaline pH value;
(d) instructions on obtaining black color;
(e) instructions for product labeling;
(f) supplier lists;
(g) sales volume information;
(h) customer lists;
(i) customer information;
(j) business and financial results and projections;
(k) pricing models for different markets;
(l) distributor contacts;
(m) marketing strategies;
(n) certificates of analysis;
(o) test results; and
(p) packaging specifications.

BLK claims that each of the above are trade secrets and that Defendants misappropriated them. "Misappropriation" means the improper acquisition, use, or disclosure of the trade secrets.

BLK also claims that Defendants' misappropriation caused it harm.

Defendants deny BLK's misappropriation of trade secrets claim.

Defendants also claim that the alleged trade secrets were available from other sources.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | |
| | | _____ Stephen V. Wilson Judge of the United States District Court Central District of California |

238087.1

**<u>Authority:</u>**

18 U.S.C. §§ 1836, 1839; CACI 4400 (2017); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) ("[T]he California Uniform Trade Secrets Act and the federal Defend Trade Secrets Act[] . . . offer essentially the same definitions for our purposes.").

**Defendants Objections**

Unix joins in Xu's objections and proposed alternative instruction, as set forth below.

**Xu's Objections and Authority:**

BLK should eliminate those alleged trade secrets for which there is no evidence of use or disclosure.

BLK should be required to identify the trade secrets it claims were misappropriated with more specificity.  "A plaintiff seeking relief must identify the trade secrets and carry the burden of showing they exist.  The plaintiff should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons …  skilled in the trade."  *Imax Corp. v. Cinema Technologies, Inc.* (9th Cir. 1998) 152 F.3d 1161, 1164–1165 (internal quotations and citations omitted).  It is not enough to claim that "product specifications" are trade secrets, BLK must identify what those "product specifications" are.

The use of the words "its proprietary" are improper as they suggest that it is established fact that the formulation belongs to BLK and is "proprietary."

**Xu's Proposed Alternative Instruction follows on next page**

## INSTRUCTION NO. 4400 (Alternate)
## MISAPPROPRIATION OF TRADE SECRETS
## (FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)
## (CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)

## INTRODUCTION

BLK claims that it is the owner of the following information and methods relating to BLK water, including, but not limited to:

(a) fulvic mineral material formulations;
(b) product specifications;
(c) instructions on obtaining the alkaline pH value;
(d) instructions on obtaining black color;
(e) instructions for product labeling;
(f) supplier lists;
(g) sales volume information;
(h) customer lists;
(i) customer information;
(j) business and financial results and projections;
(k) pricing models for different markets;
(l) distributor contacts;
(m) marketing strategies;
(n) certificates of analysis;
(o) test results; and
(p) packaging specifications.

BLK claims that each of the above are trade secrets and that Defendants misappropriated them. "Misappropriation" means the improper acquisition, use, or disclosure of the trade secrets.

BLK also claims that Defendants' misappropriation caused it harm.

Defendants deny that the information and methods identified above are trade secrets and further deny that they misappropriated them.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**INSTRUCTION NO. 4401A**

**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**ESSENTIAL FACTUAL ELEMENTS**

BLK claims that Defendants have misappropriated a trade secret. To succeed on this claim, BLK must prove all of the following:

1. That BLK owned at least one of the following:

   (a) its proprietary fulvic mineral material formulations;
   (b) product specifications;
   (c) instructions on obtaining the alkaline pH value;
   (d) instructions on obtaining black color;
   (e) instructions for product labeling;
   (f) supplier lists;
   (g) sales volume information;
   (h) customer lists;
   (i) customer information;
   (j) business and financial results and projections;
   (k) pricing models for different markets;
   (l) distributor contacts;
   (m) marketing strategies;
   (n) certificates of analysis;
   (o) test results; and
   (p) packaging specifications

2. That this information and methods were trade secrets at the time of the misappropriation;
3. That Defendants improperly acquired, used, or disclosed any of this information;
4. That BLK was harmed; and
5. That Defendants' acquisition, use, or disclosure of trade secrets was a substantial factor in causing BLK's harm.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | |
| | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**Authority:**

18 U.S.C. §§ 1836, 1839; CACI 4401 (2017); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) ("[T]he California Uniform Trade Secrets Act and the federal Defend Trade Secrets Act[] . . . offer essentially the same definitions for our purposes.").

**Defendants' Objections**

Unix joins in Xu's objections and proposed alternative instruction, as set forth below.

**Xu's Objections and Authority:**
BLK should eliminate those alleged trade secrets for which there is no evidence of use or disclosure.

BLK should be required to identify the trade secrets it claims were misappropriated with more specificity.  "A plaintiff seeking relief must identify the trade secrets and carry the burden of showing they exist.  The plaintiff should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons … skilled in the trade."  *Imax Corp. v. Cinema Technologies, Inc.* (9th Cir. 1998) 152 F.3d 1161, 1164–1165 (internal quotations and citations omitted).  It is not enough to claim that "product specifications" are trade secrets, BLK must identify what those "product specifications" are.

The "Directions for Use" for CACI 4401 provide that the plaintiff should "specifically describe all items that are alleged to be the trade secrets that were misappropriated."  CACI, 4401 at page 1071.

The use of the words "its proprietary" are improper as they suggest that it is established fact that the formulation belongs to BLK and is "proprietary."

There is no basis for any claim that the Defendants improperly acquired the trade secrets.   As the Directions for Use specify, "[t]o avoid confusion, instruct the jury only on the particular theory of misappropriation applicable under the facts of the case."  CACI, 4401 at page 1071.

The instruction as drafted creates a situation where the jury could "mix and match" the different alleged trade secrets to find liability.  For example, the instructions as drafted could permit a jury to find that some information is a trade secret but that the defendants used other information that the jury did not find to be a trade secret.

**Xu's Proposed Alternative Instruction (Separate Submitted as No. 4401B):**
BLK claims that Defendants have misappropriated a trade secret. To succeed on this claim, BLK must prove all of the following:

1.  That BLK owned at least one of the following:

    (a) fulvic mineral material formulations;
    (b) product specifications;
    (c) instructions on obtaining the alkaline pH value;
    (d) instructions on obtaining black color;
    (e) instructions for product labeling;
    (f) supplier lists;
    (g) sales volume information;

(h) customer lists;
(i) customer information;
(j) business and financial results and projections;
(k) pricing models for different markets;
(l) distributor contacts;
(m) marketing strategies;
(n) certificates of analysis;
(o) test results; and
(p) packaging specifications

2. That one or more of the information and methods owned by BLK were trade secrets at the time of the misappropriation;
3. That Defendants improperly used or disclosed any of the information or methods found by you to be a trade secret;
4. That BLK was harmed by such use or disclosure; and
5. That Defendant's use or disclosure of trade secrets was a substantial factor in causing BLK's harm

238087.1

**INSTRUCTION NO. 4405A**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**MISAPPROPRIATION BY ACQUISITION**

A Defendant misappropriated BLK's trade secrets by acquisition if a Defendant acquired the trade secrets and knew or had reason to know that they used improper means to acquire them.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**Authority:**
18 U.S.C. § 1839(5)(A); CACI 4405.

**Defendants' Objections**

Unix joins in Xu's objections, as set forth below.

**Xu's Objections and Authority**

Ms. Xu objects to giving this instruction.  There is no evidence support a claim that either of the Defendants acquired any trade secrets through "improper means."  ""Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means."  Civil Code § 3426.1.

**INSTRUCTION NO. 4406A**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**MISAPPROPRIATION BY DISCLOSURE**

A defendant misappropriated BLK's trade secrets by disclosure if:

1. The Defendant disclosed them without BLK's consent; and

2. did any of the following:

    a. acquired knowledge of the trade secrets by improper means;

    b. at the time of disclosure, knew or had reason to know that its knowledge of BLK's trade secrets came from or through a third party, and that third party had previously acquired the trade secrets by improper means;

    c. at the time of disclosure, knew or had reason to know that its knowledge of BLK's trade secrets was acquired under circumstances giving rise to a duty to maintain secrecy, which created a duty to keep the information and methods secret;

    d. at the time of disclosure, knew or had reason to know that its knowledge of BLK's trade secrets came from or through a third party, and that third party had a duty to keep the information and methods secret;

    e. Before a material change of its position, knew or had reason to know that they were trade secrets and that knowledge of them had been acquired by accident or mistake.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | |
| | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority:</u>**

18 U.S.C. § 1839(5)(B); CACI 4406 (2017); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) ("[T]he California Uniform Trade Secrets Act and the federal Defend Trade Secrets Act[] . . . offer essentially the same definitions for our purposes.").

**Defendants' Objections**

Unix joins in Xu's objections and proposed alternative instruction, as set forth below.

**Xu's Objections and Authority**

BLK's theory of misappropriation by disclosure only applies to Unix as there is no claim or evidence that Ms. Xu disclosed any of the alleged trade secrets.  Therefore, this instruction should be tailored to Unix.  And since there is no allegation that Unix obtained any trade secrets through improper means or through third parties, those elements of the instruction should not be given.

**Defendants' Proposed Alternative Instruction (Separately Submitted as No. 4406B)**

Unix misappropriated BLK's trade secrets by disclosure if:

1. Unix disclosed a trade secret without BLK's consent; and

2. Unix, at the time of disclosure, knew or had reason to know that its knowledge of BLK's trade secrets was acquired under circumstances giving rise to a duty to maintain secrecy, which created a duty to keep the information and methods secret.

238087.1

**INSTRUCTION NO. 4407A**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**MISAPPROPRIATION BY USE**

A Defendant misappropriated BLK's trade secrets by use if a Defendant:

1. used them without BLK's consent; and
2. did any of the following:
   a.  acquired knowledge of the trade secrets by improper means;

   b.  at the time of use, knew or had reason to know that its knowledge of the trade secrets came from or through a third party, and that third party had previously acquired the trade secrets by improper means;

   c.  at the time of use, knew or had reason to know that its knowledge of the trade secrets was acquired under circumstances creating a legal obligation to limit use of the methods and information;

   d.  at the time of use, knew or had reason to know that its knowledge of the trade secrets came from or through a third party, and that third party had a duty to BLK to limit use of the methods or information;

   e.  Before a material change of its position, knew or had reason to know that they were trade secrets and that knowledge of them had been acquired by accident or mistake.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority:</u>**

18 U.S.C. § 1839(5)(B); CACI 4407 (2017); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) ("[T]he California Uniform Trade Secrets Act and the federal Defend Trade Secrets Act[] . . . offer essentially the same definitions for our purposes.").

**Defendants' Objections**

Unix joins in Xu's objections and proposed alternative instruction, as set forth below.

**Xu's Objections and Authority:**

The instruction should be tailored to the facts of the case.  The allegations concerning use are that Unix used trade secrets disclosed to them under a duty of confidentiality.  The allegation against Ms. Xu are that she knew or should have known that her knowledge of the trade secret was derived through a third party who had a duty to limit use of the trade secret.  No instructions should be given on the other theories.

**Defendants' Proposed Alternative Instruction (Separately Submitted as No. 4407B):**

A Defendant misappropriated BLK's trade secrets by use if a Defendant:

1. used a trade secret without BLK's consent; and
2. did any of the following:

        a.   at the time of use, knew or had reason to know that its knowledge of the trade secret was acquired under circumstances creating a legal obligation to limit use of the trade secret; or

        b.   at the time of use, knew or had reason to know that its knowledge of the trade secret came from or through a third party, and that third party had a duty to BLK to limit use of the trade secret.

**INSTRUCTION NO. 4408A**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**IMPROPER MEANS OF ACQUIRING TRADE SECRET**

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, bribery, misrepresentation, breach or inducing a breach of a duty to maintain secrecy, wiretapping, or electronic eavesdropping.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | |
| | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**Authority:**

18 U.S.C. § 1839(6); CACI 4408 (2017); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) ("[T]he California Uniform Trade Secrets Act and the federal Defend Trade Secrets Act[] . . . offer essentially the same definitions for our purposes.").

**Defendants' Objections**

Unix joins in Xu's objections and proposed alternative instruction, as set forth below.

**Xu's Objections and Authority:**

Ms. Xu objects to the giving of this instruction.  There is no evidence to support a claim that either of the Defendants acquired any alleged trade secrets by improper means.

If the instruction is to be given, the second paragraph (included below) should be included.

**Xu's Proposed Alternative follows on next page**

**INSTRUCTION NO. 4408 (Alternate)**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**IMPROPER MEANS OF ACQUIRING TRADE SECRET**

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, bribery, misrepresentation, breach or inducing a breach of a duty to maintain secrecy, wiretapping, or electronic eavesdropping.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by observing the information in public or on public display or obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | |
| | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**INSTRUCTION NO. 4499A**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**PROVING MISAPPROPRIATION THROUGH**
**SUBSTANTIAL SIMILARITY AND ACCESS**

One way BLK can demonstrate misappropriation of its methods and information is by proving that:   (1) BLK and Xu's products bear a substantial similarity and (2) Xu and Unix had access to the BLK's methods and information.

If you find that BLK and Xu's products bear substantial similarity and that Xu and Unix had access to the methods and information, then Xu can prove that she did not misappropriate the methods and information by showing that Xu independently invented the USA Water product.

If you find that BLK and Xu's products bear substantial similarity and that a Defendant had access to the methods and information, then Unix can prove it did not misappropriate the methods and information by showing that Unix independently manufactured and bottled the USA Water product without reference to the BLK's methods and information.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**Authority**

*Garter-Bare Co. v. Munsingwear, Inc.*, 723 F.2d 707, 714 (9th Cir. 1984), *cert. denied,* 469 U.S. 980, 83 L. Ed. 2d 316, 105 S. Ct. 381 (1984) (shifting burden to defendant to show independent invention where there was substantial evidence of access to the information and similarities between the products).

**Defendants' Objections**

Unix joins in Xu's objections, as set forth below.

**Xu's Objections and Authority:**

BLK unpersuasively attempts to shoehorn its case into the analysis set forth in *Garter-Bare Co. v. Munsingwear, Inc.*, 723 F.2d 707 (9th Cir. 1984) ("*Garter*"). In *Garter*, the plaintiff and the defendant worked side by side for a number of years on the development of a girdle. *Id.* at 709-10. The defendant terminated the relationship, claiming that it had no interest in the project, only to immediately develop a product encompassing the design process that was "closely similar" to the secret process the plaintiff had disclosed to the defendant. *Id.* at 714-715.

The Court found "substantial evidence" that (1) the plaintiff had disclosed trade secrets to the defendant <u>and</u> (2) the defendant sold a garment with a design process ***closely similar*** to the secret process the defendant had disclosed to the plaintiff. Based on these findings, the Court held that it was proper to shift the burden to the defendant to show that "at the time, it could have arrived at the process by independent invention, inspection, or reverse engineering." *Id.* (internal citations and quotations omitted).

Plaintiff grossly distorts the holding of *Garter*. Plaintiff argues that, under *Garter*, Ms. Xu has the burden of demonstrating independent invention because the *products* at issue are "substantially similar" and the defendant had "access" to plaintiff's alleged trade secrets. That makes no sense for two reasons. First, the question is not whether the *products* are substantially similar, but whether the defendant's *product* reflects the plaintiff's trade secrets. If two table manufacturers make tables that are substantially similar to each other—but the similarities do not relate to alleged trade secrets—there is no justification to require the defendant to show that it independently invented its design. In other words, the plaintiff cannot point to the fact that each table has four legs, a flat surface, and is made of wood to prove a trade secret claim. *See Stratienko v. Cardis Corp.*, 429 F.3d 592, 600-601 (6th Cir. 2005) (holding circumstantial case can only be made where the defendant's products share similar features to the plaintiff's <u>trade secrets</u>).

Second, *Garter* requires "substantial evidence" that the plaintiff had disclosed trade secrets to the defendant. In this instance, Plaintiff attempts to use *Garter* as a substitute for actually proving that Unix disclosed trade secrets to Ms. Xu. In essence, Plaintiff contends that the Court should ignore the absence of any evidence of disclosure of trade secrets because Ms. Xu's black water beverage is similar to Plaintiff's product. Trade secret law is not concerned with whether products are similar, but whether the defendant misappropriated the plaintiff's trade secrets.

238087.1

**INSTRUCTION NO. 4411A**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION**

If you decide that a Defendant's misappropriation caused BLK harm, you must decide whether that conduct justifies an award of punitive damages against that Defendant. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed BLK and to discourage similar conduct in the future.

In order to recover punitive damages, BLK must prove by clear and convincing evidence that the Defendant acted willfully and maliciously. You must determine whether the Defendant acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.

"Willfully" means that the Defendant acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that the Defendant acted with an intent to cause injury, or that the Defendant's conduct was despicable and was done with a willful and knowing disregard for the rights of others.  "Despicable conduct" is conduct so vile, base, or wretched that it would looked down on and despised by ordinary decent people.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | |
| | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**Authority:**

18 U.S.C. § 1836(b)(3)(C); CACI 4411 (2017); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) ("[T]he California Uniform Trade Secrets Act and the federal Defend Trade Secrets Act[] . . . offer essentially the same definitions for our purposes.").

**<u>Defendants' Objections</u>**

Unix joins in Xu's objections, as set forth below.

**<u>Xu's Objections and Authority:</u>**

Ms. Xu objects to the giving of this instruction as there is insufficient evidence to warrant it.  If the Court determines that it is appropriate to give the instructions, the proposed modifications make the instruction clearer.

**INSTRUCTION NO. 15.7A**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW**

**ELEMENTS AND BURDEN OF PROOF—TRADE DRESS INFRINGEMENT**

On BLK's claim for trade dress infringement, BLK has the burden of proving by a preponderance of the evidence each of the following elements:

1. BLK's design for the BLK product is distinctive;
2. BLK owns the design of the BLK product as trade dress;
3. the design for the BLK product is nonfunctional; and
4. a Defendant used trade dress similar to BLK's design for the BLK product without the consent of BLK in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Xu's goods.

If you find that each of the elements on which BLK has the burden of proof has been proved, your verdict should be for BLK.

If, on the other hand, BLK has failed to prove any of these elements, your verdict should be for the defendant.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority:</u>**

Ninth Circuit Manual of Model Civil Jury Instructions (2017 edition, updated Sept. 2018) § 15.7.

**Defendants' Objections**

Unix joins in Xu's objections and proposed alternative instruction, as set forth below.

**Ms. Xu's Objections and Authority:**

The Ninth Circuit Model Instruction provides that the instruction should "describe the plaintiff's trade dress."  In its First Amended Complaint, BLK identifies its trade dress as its "packaging," not its product.  First Amended Complaint, ¶¶ 86-93.  Therefore, BLK may not now claim that its trade dress includes its "product" or any other matter.

If BLK is permitted to include its product as part of its trade dress, it must prove that its trade dress has acquired secondary meaning rather than simply being inherently distinctive.  *See Wal-Mart-Stores, Inc. v. Samara Brothers, Inc.* (2000) 529 U.S. 205, 212-216 ("We hold that, in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning.");

The changes made to the first element were necessary to make the instruction consistent with Model Instruction 15.9, which provides for "inherent distinctiveness" or "secondary meaning."

**Xu's Proposed Alternative Instruction follows on next page**

**INSTRUCTION NO. 15.7 (Alternate)**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW**

**ELEMENTS AND BURDEN OF PROOF—TRADE DRESS INFRINGEMENT**

On BLK's claim for trade dress infringement, BLK has the burden of proving by a preponderance of the evidence each of the following elements:

1. BLK's [BLK must describe the alleged trade dress] is inherently distinctive or has acquired a secondary meaning;
2. BLK owns the [BLK must describe the alleged trade dress] as trade dress;
3. [BLK must describe the alleged trade dress] is nonfunctional; and
4. the Defendant used trade dress similar to [BLK must describe the trade dress] without the consent of BLK in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Xu's goods.

If you find that each of the elements on which BLK has the burden of proof has been proved, your verdict should be for BLK.

If, on the other hand, BLK has failed to prove any of these elements, your verdict should be for the Defendant.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**INSTRUCTION NO. 15.9A**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND**
**CALIFORNIA COMMON LAW**

**INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARKS**

BLK's design and packaging of BLK water is not registered. Unregistered trade dress can be valid and provide the trade dress owner with the exclusive right to use that design. BLK must prove by a preponderance of the evidence that the design or packaging of BLK water is valid trade dress.

A valid trade dress is a design, symbol, or any combination of these items that is either:

1. inherently distinctive; or
2. descriptive, but has acquired a secondary meaning.

Only a valid trade dress can be infringed. Only if you determine BLK proved by a preponderance of the evidence that the design of the product or its packaging of BLK water is a valid trade dress should you consider whether BLK owns it or whether Unix or Xu's actions infringed it.

Only if you determine that the design or packaging of BLK water is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning, as I will direct in Instruction No. 15.11.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions (2017 edition, updated Sept. 2018) § 15.9.

**Defendants Objections**

Unix joins in Xu's objections and proposed alternative instruction, as set forth below.

**Ms. Xu's Comments and Authority.**

The Ninth Circuit Model Instruction provides that the instruction should "describe the plaintiff's trade dress." In its First Amended Complaint, BLK identifies its trade dress as its "packaging," not its product. First Amended Complaint, ¶¶ 86-93. Therefore, BLK may not now claim that its trade dress includes its "product" or any other matter.

If BLK is permitted to include its product as part of its trade dress, it must prove that its trade dress has acquired secondary meaning rather than simply being inherently distinctive. *See Wal-Mart-Stores, Inc. v. Samara Brothers, Inc.* (2000) 529 U.S. 205, 212-216 ("We hold that, in an action for infringement of unresgitered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning.");

The instruction should include the requirement that trade dress also be non-functional in order to qualify as "valid" trade dress.

The proposed instruction improperly places the burden of proving a lack of secondary meaning on the Defendants.

**Ms. Xu's Proposed Alternative Instruction follows on next page**

238087.1

**INSTRUCTION NO. 15.9 (Alternate)**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND**
**CALIFORNIA COMMON LAW**

**INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARKS**

[BLK must describe its alleged trade dress] is not registered. Unregistered trade dress can be valid and provide the trade dress owner with the exclusive right to use that trade dress. BLK must prove by a preponderance of the evidence that the design or packaging of BLK water is valid trade dress.

A valid trade dress is a design, symbol, or any combination of these items that is either:

1. inherently distinctive; or
2. has acquired a secondary meaning.

In addition, valid trade dress must also be non-functional.

Only a valid trade dress can be infringed. Only if you determine BLK proved by a preponderance of the evidence that the design of the product or its packaging of BLK water is a valid trade dress should you consider whether BLK owns it or whether Unix or Xu's actions infringed it.

Only if you determine that the [BLK must describe its alleged trade dress] is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning, as I will direct in Instruction No. 15.11.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

INSTRUCTION NO. 15.10A
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW**

**INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARK— DISTINCTIVENESS**

Strength as a Likelihood of Confusion Factor

How distinctively or strongly a product's trade dress (i.e., the design of its product or its packaging) indicates that a good comes from a particular source, even if unknown, is an important factor to consider in assessing its validity and for determining whether the trade dress used by Unix and Xu creates for consumers a likelihood of confusion with BLK's trade dress.

BLK asserts the design or packaging of BLK water is valid and protectable trade dress for its BLK water. BLK contends that Unix and Xu's use of similar product or packaging in connection with Xu's USA Product infringes BLK's trade dress and is likely to cause confusion about the origin of goods associated with that trade dress.

In order to determine if BLK has met its burden of showing that the design of the product or its packaging is valid trade dress, you should classify it on the spectrum of trade dress distinctiveness that I will explain in this instruction.

Trade dress is inherently distinctive if the total impression it gives the consumer is one that identifies it as coming from a specific origin or source, whether or not that source is known to the consumer. Inherently distinctive trade dress helps consumers identify the product, distinguishing BLK's product from that produced by others, such as Xu's USA Water.

You should consider the total visual impression of the trade dress, not each element of it in isolation. Inherently distinctive trade dress often uses common, non-distinctive elements when considered individually. However, it is the combination of elements and the total impression that the dress conveys to the consumer that shows if it is distinctive.

Spectrum of Marks

Trade dress law provides great protection to distinctive or strong trade dress. Conversely, trade dress that is not as distinctive or strong is called "weak" trade dress and receives less protection from infringing uses. Trade dress that is not distinctive is not entitled to any trade dress protection. For deciding trade dress protectability you must consider whether trade dress is inherently distinctive. Trade dress is grouped into four categories according to its relative strength or distinctiveness. These four categories are, in order of strength or distinctiveness: arbitrary (which is inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which I explain in Instruction No. 15.11 and generic names (which are entitled to no protection).

238087.1

**Arbitrary Trade Dress.** The first category of "inherently distinctive" trade dress is arbitrary trade dress. Arbitrary trade dress is considered strong and is clearly protectable. It involves the arbitrary, fanciful or fictitious use of a design or symbol to designate the source of a product. Such trade dress is a design or symbol that in no way describes or has any relevance to the particular product it is meant to identify. It may be a common design or symbol used in an unfamiliar way. It may be a newly created (coined) design or symbol or parts of common designs or symbols which are applied in a fanciful, fictitious or unfamiliar way, solely as trade dress.

For instance, the trade dress for an apple-flavored candy product would be arbitrary if the candy were sold in a box shaped like a television, with a screen in which you could see the small, apple flavored candy. It would also be arbitrary if packaged in a container of some fanciful, new and previously unknown shape. It is totally unrelated to the apple flavored candy, whether using the shape of the television that has no relation to an apple flavored candy, or fanciful, previously unknown shape.

**Suggestive Trade Dress.** The next category is suggestive trade dress. Suggestive trade dress is also inherently distinctive but is considered weaker than arbitrary trade dress. Unlike arbitrary trade dress, which is in no way related to what the product is or its components, quality, or characteristics, suggestive trade dress implies some characteristic or quality of the product to which it is attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the trade dress's significance, then the trade dress does not describe the product's features, but merely suggests them.

For instance, the trade dress for an apple-flavored candy product would be suggestive if the producer were to sell the candy in a box shaped like a school text book. The text book appearance of the box connotes a characteristic of the product, allowing the consumer to infer something about the product from the trade dress. Here, the book packaging suggesting the idea of children bringing an apple to school to share with their favorite teacher, and that perhaps they can bring the candy in lieu of the apple. This can suggest to the consumer that the candies have an apple flavor.

**Descriptive Trade Dress.** The third category is descriptive trade dress. Descriptive trade dress directly identifies or describes some aspect, characteristic, or quality of the product to which it is affixed in a straightforward way that requires no exercise of imagination to be understood. For instance, the trade dress for an apple-flavored candy product would be descriptive if the producer sold the candy in a small plastic apple-shaped container. The packaging describes a characteristic of the product - it tastes like apple. This trade dress can only be protected if it acquires secondary meaning (e.g., while it does not "immediately" indicate the source of the candy, with time there may be proof that the small plastic apple container became known to children as the product of this particular maker of this apple flavored candy).

**Generic Trade Dress.** The fourth category is entitled to no protection at all. Generic trade dress does not identify the particular maker of a product at all, and instead identifies the product itself. For instance, the trade dress for an apple-flavored candy product would be generic if the candy were sold in red, plastic wrappers so that they looked like small round balls. Because they share a shape and color that many other candies have, the maker of the round apple flavored candy

238087.1

would not be able to get trade dress protection for this packaging. The red plastic wrapping on
the small, round candy does not distinctively indicate any particular maker of candy, whatever its
flavor.

Mark Distinctiveness and Validity

If you decide that the design of the product is arbitrary or suggestive, it is considered to be
inherently distinctive. An inherently distinctive trade dress is valid and protectable.

On the other hand, if you determine that the design of the product is generic, it cannot be
distinctive and therefore is not valid nor protectable. You must render a verdict for Unix on the
charge of infringement in Instruction No. 15.6.

If you decide that the design of the product is descriptive, you will not know if the trade dress is
valid or invalid until you consider whether it has gained distinctiveness by the acquisition of
secondary meaning, which I explain in Instruction No. 15.11.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions (2017 edition, updated Sept. 2018) § 15.10 (modified).

**Defendants' Objections**

Unix joins in Xu's objections and proposed alternative instruction, as set forth below.

**Ms. Xu's Comments and Authority.**

The Ninth Circuit Model Instruction provides that the instruction should "describe the plaintiff's trade dress."  In its First Amended Complaint, BLK identifies its trade dress as its "packaging," not its product.  First Amended Complaint, ¶¶ 86-93.  Therefore, BLK may not now claim that its trade dress includes its "product" or any other matter.

If BLK is permitted to include its product as part of its trade dress, it must prove that its trade dress has acquired secondary meaning rather than simply being inherently distinctive.  *See Wal-Mart-Stores, Inc. v. Samara Brothers, Inc.* (2000) 529 U.S. 205, 212-216 ("We hold that, in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning.");

The instruction should include the requirement that trade dress also be non-functional in order to qualify as "valid" trade dress.

The last sentence of the first paragraph misquotes the model instruction and inserts the concept of likelihood of confusion into an instruction on distinctiveness.  Such insertion is like to cause confusion among the jurors.

**Ms. Xu's Proposed Alternative Instruction follows on next page**

**INSTRUCTION NO. 15.10 (Alternate)**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND**
**CALIFORNIA COMMON LAW**

**INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARK—**
**DISTINCTIVENESS**

Strength as a Likelihood of Confusion Factor

How distinctively or strongly a product's trade dress (i.e., the design of its packaging) indicates that a good comes from a particular source, even if unknown, is an important factor to consider in assessing its validity.

BLK asserts the [BLK must describe trade dress] is valid and protectable trade dress for its BLK water. BLK contends that the packaging of Ms. Xu's USA Product infringes BLK's trade dress and is likely to cause confusion about the origin of goods associated with that trade dress.

In order to determine if BLK has met its burden of showing that [BLK must describe its trade dress] is valid trade dress, you should classify it on the spectrum of trade dress distinctiveness that I will explain in this instruction.

Trade dress is inherently distinctive if the total impression it gives the consumer is one that identifies it as coming from a specific origin or source, whether or not that source is known to the consumer. Inherently distinctive trade dress helps consumers identify the product, distinguishing BLK's product from that produced by others, such as Xu's USA Water.

You should consider the total visual impression of the trade dress, not each element of it in isolation. Inherently distinctive trade dress often uses common, non-distinctive elements when considered individually. However, it is the combination of elements and the total impression that the dress conveys to the consumer that shows if it is distinctive.

Spectrum of Marks

Trade dress law provides great protection to distinctive or strong trade dress. Conversely, trade dress that is not as distinctive or strong is called "weak" trade dress and receives less protection from infringing uses. Trade dress that is not distinctive is not entitled to any trade dress protection. For deciding trade dress protectability you must consider whether trade dress is inherently distinctive. Trade dress is grouped into four categories according to its relative strength or distinctiveness. These four categories are, in order of strength or distinctiveness: arbitrary (which is inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which I explain in Instruction No. 15.11 and generic names (which are entitled to no protection).

**Arbitrary Trade Dress.** The first category of "inherently distinctive" trade dress is arbitrary trade dress. Arbitrary trade dress is considered strong and is clearly protectable. It involves the arbitrary or fanciful use of a design or symbol to designate the source of a product. Such trade

dress is a design or symbol that in no way describes or has any relevance to the particular
product it is meant to identify. It may be a common design or symbol used in an unfamiliar way.
It may be a newly created (coined) design or symbol or parts of common designs or symbols
which are applied in a fanciful, fictitious or unfamiliar way, solely as trade dress.

For instance, the trade dress for an apple-flavored candy product would be arbitrary if the candy
were sold in a box shaped like a television, with a screen in which you could see the small, apple
flavored candy. It would also be arbitrary if packaged in a container of some fanciful, new and
previously unknown shape. It is totally unrelated to the apple flavored candy, whether using the
shape of the television that has no relation to an apple flavored candy, or fanciful, previously
unknown shape.

**Suggestive Trade Dress.** The next category is suggestive trade dress. Suggestive trade dress is
also inherently distinctive but is considered weaker than arbitrary trade dress. Unlike arbitrary
trade dress, which is in no way related to what the product is or its components, quality, or
characteristics, suggestive trade dress implies some characteristic or quality of the product to
which it is attached. If the consumer must use imagination or any type of multi-stage reasoning
to understand the trade dress's significance, then the trade dress does not describe the product's
features, but merely suggests them.

For instance, the trade dress for an apple-flavored candy product would be suggestive if the
producer were to sell the candy in a box shaped like a school text book. The text book
appearance of the box connotes a characteristic of the product, allowing the consumer to infer
something about the product from the trade dress. Here, the book packaging suggesting the idea
of children bringing an apple to school to share with their favorite teacher, and that perhaps they
can bring the candy in lieu of the apple. This can suggest to the consumer that the candies have
an apple flavor.

**Descriptive Trade Dress.** The third category is descriptive trade dress. Descriptive trade dress
directly identifies or describes some aspect, characteristic, or quality of the product to which it is
affixed in a straightforward way that requires no exercise of imagination to be understood.
For instance, the trade dress for an apple-flavored candy product would be descriptive if the
producer sold the candy in a small plastic apple-shaped container. The packaging describes a
characteristic of the product - it tastes like apple. This trade dress can only be protected if it
acquires secondary meaning (e.g., while it does not "immediately" indicate the source of the
candy, with time there may be proof that the small plastic apple container became known to
children as the product of this particular maker of this apple flavored candy).

**Generic Trade Dress.** The fourth category is entitled to no protection at all. Generic trade dress
does not identify the particular maker of a product at all, and instead identifies the product itself.
For instance, the trade dress for an apple-flavored candy product would be generic if the candy
were sold in red, plastic wrappers so that they looked like small round balls. Because they share
a shape and color that many other candies have, the maker of the round apple flavored candy
would not be able to get trade dress protection for this packaging. The red plastic wrapping on
the small, round candy does not distinctively indicate any particular maker of candy, whatever its
flavor.

Mark Distinctiveness and Validity

If you decide that the design of the product is arbitrary or suggestive, it is considered to be inherently distinctive. An inherently distinctive trade dress is valid and protectable, provided the trade dress is also non-functional.

On the other hand, if you determine that the design of the product is generic, it cannot be distinctive and therefore is not valid nor protectable. You must render a verdict for Unix and Ms. Xu on the charge of infringement in Instruction No. 15.6.

If you decide that the design of the product is descriptive, you will not know if the trade dress is valid or invalid until you consider whether it has gained distinctiveness by the acquisition of secondary meaning, which I explain in Instruction No. 15.11.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**INSTRUCTION NO. 15.11A**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW**

**INFRINGEMENT—ELEMENTS—VALIDITY—DISTINCTIVENESS—SECONDARY MEANING**

If you determined in Instruction No. 15.10 that the design or packaging of BLK water is descriptive, you must consider the recognition that the design has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive. This market recognition is called the trade dress's "secondary meaning."

The design or packaging of a product acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates the design or packaging of BLK water with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether the design or packaging of BLK water has acquired a secondary meaning, consider the following factors:

(1) Consumer Perception. Whether the people who purchase BLK water associate the design or packaging of the product with BLK;

(2) Advertisement. To what degree and in what manner BLK may have advertised using the design of the product or packaging of BLK water;

(3) Demonstrated Utility. Whether BLK successfully used the design of the product or packaging of BLK water to increase the sales of its product;

(4) Extent of Use. The length of time and manner in which BLK used the design or packaging of BLK water;

(5) Exclusivity. Whether BLK's use of the design or packaging of BLK water was exclusive;

(6) Copying. Whether Unix and Xu intentionally copied BLK's trade dress in the design or packaging of BLK water;

(7) Actual Confusion. Whether Unix and Xu's use of BLK's trade dress in the design of the product or packaging of BLK water has led to actual confusion among a significant number of consumers.

The presence or absence of any particular factor should not necessarily resolve whether the design or packaging of BLK water has acquired secondary meaning.


Descriptive trade dress is protectable only to the extent you find it acquired distinctiveness through secondary meaning by the public coming to associate the design or packaging of BLK

water with BLK. Descriptive trade dress is entitled to protection only as broad as the secondary meaning it has acquired, if any. If it has acquired no secondary meaning, it is entitled to no protection and cannot be considered valid trade dress.

BLK has the burden of proving that the design or packaging of BLK water has acquired a secondary meaning. Unix and Xu have the burden of proving that the design of the product or packaging of BLK water lacks a secondary meaning.

The mere fact that BLK is using the design or packaging of BLK water, or that BLK began using it before Unix and Xu, does not mean that the trade dress has acquired secondary meaning. There is no particular length of time that trade dress must be used before it acquires a secondary meaning.

| GIVEN: | | |
| --- | --- | --- |
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority:</u>**

Ninth Circuit Manual of Model Civil Jury Instructions (2017 edition, updated Sept. 2018) § 15.11 (modified).

**Defendants' Objections**

Unix joins in Xu's objections and proposed alternative instruction, as set forth below.  In addition, Unix objects to this instruction because BLK has provided no evidence and/or expert testimony that the design or packaging of BLK water has acquired any secondary meaning.  Thus, this instruction on secondary meaning is inappropriate here.


**Ms. Xu's Objections and Authority:**

The Ninth Circuit Model Instruction provides that the instruction should "describe the plaintiff's trade dress."  In its First Amended Complaint, BLK identifies its trade dress as its "packaging," not its product.  First Amended Complaint, ¶¶ 86-93.  Therefore, BLK may not now claim that its trade dress includes its "product" or any other matter.

If BLK is permitted to include its product as part of its trade dress, it must prove that its trade dress has acquired secondary meaning rather than simply being inherently distinctive.  *See Wal-Mart-Stores, Inc. v. Samara Brothers, Inc.* (2000) 529 U.S. 205, 212-216 ("We hold that, in an action for infringement of unresgitered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning.");

The instruction should include the requirement that trade dress also be non-functional in order to qualify as "valid" trade dress.

The last sentence of the first paragraph misquotes the model instruction and inserts the concept of likelihood of confusion into an instruction on distinctiveness.  Such insertion is like to cause confusion among the jurors.


**Ms. Xu's Proposed Alternative Instruction follows on next page**

**INSTRUCTION NO. 15.11 (Alternate)**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW**

**INFRINGEMENT—ELEMENTS—VALIDITY—DISTINCTIVENESS—SECONDARY MEANING**

If you determined in Instruction No. 15.10 that the [BLK must describe trade dress] is descriptive, you must consider the recognition that the design has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive. This market recognition is called the trade dress's "secondary meaning."

The [BLK must describe trade dress] acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates the [BLK must describe trade dress] with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether [BLK must describe trade dress] has acquired a secondary meaning, consider the following factors:

(1) Consumer Perception. Whether the people who purchase BLK water associate [BLK must describe trade dress] product with BLK;

(2) Advertisement. To what degree and in what manner BLK may have advertised using the design of [BLK must describe trade dress];

(3) Demonstrated Utility. Whether BLK successfully used [BLK must describe the trade dress] to increase the sales of its product;

(4) Extent of Use. The length of time and manner in which BLK used [BLK must describe the trade dress];

(5) Exclusivity. Whether BLK's use of [BLK must describe the trade dress] was exclusive;

(6) Copying. Whether Unix and Xu intentionally copied BLK's [BLK must describe the trade dress] ;

(7) Actual Confusion. Whether Unix and Xu's use of [BLK must describe the trade dress] has led to actual confusion among a significant number of consumers.

The presence or absence of any particular factor should not necessarily resolve whether [BLK must describe the trade dress] has acquired secondary meaning.

Descriptive trade dress is protectable only to the extent you find it acquired distinctiveness through secondary meaning by the public coming to associate [BLK must describe the trade dress] with BLK. Descriptive trade dress is entitled to protection only as broad as the secondary

meaning it has acquired, if any. If it has acquired no secondary meaning, it is entitled to no
protection and cannot be considered valid trade dress.

BLK has the burden of proving that [BLK must describe the trade dress] has acquired a
secondary meaning.

The mere fact that BLK is using [BLK must describe the trade dress], or that BLK began using
[BLK must describe the trade dress] before Unix and Xu, does not mean that the trade dress has
acquired secondary meaning. There is no particular length of time that trade dress must be used
before it acquires a secondary meaning.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

INSTRUCTION NO. 15.18A
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS—*SLEEKCRAFT* TEST**

You must consider whether Unix and Xu's use of BLK's trade dress is likely to cause confusion about the source of BLK's or Xu's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1) Strength or Weakness of BLK's Trade Dress. The more the consuming public recognizes BLK's trade dress as an indication of origin of BLK's goods, the more likely it is that consumers would be confused about the source of Xu's goods if Xu uses similar trade dress.

(2) Unix and Xu's Use of the Design. If Unix, Xu and BLK use their designs on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3) Similarity of BLK's and Xu's Design. If the overall impression created by BLK's trade dress in the marketplace is similar to that created by Xu's trade dress in appearance, there is a greater chance that consumers are likely to be confused by Unix and Xu's use of the design. Similarities in appearance weigh more heavily than differences in finding the designs are similar.

(4) Actual Confusion. If use by Unix and Xu of BLK's trade dress has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, Unix and Xu's use of the trade dress may still be likely to cause confusion. As you consider whether the trade dress used by Unix and Xu creates for consumers a likelihood of confusion with BLK's trade dress, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5) Unix and Xu's Intent. Knowing use by Unix and Xu of BLK's trade dress to identify similar goods may strongly show an intent to derive benefit from the reputation of BLK's trade dress, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that Unix and Xu acted knowingly, the use of BLK's trade dress to identify similar goods may indicate a likelihood of confusion.

(6) Marketing/Advertising Channels. If BLK's and Xu's goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7) Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser

exercising ordinary caution may be. They may be less likely to be confused by similarities in BLK's and Xu's trade dress.

(8) Product Line Expansion. When the parties' products differ, you may consider how likely BLK is to begin selling the products for which Unix and Xu are using BLK's trade dress. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

| **GIVEN:** | | |
|---|---|---|
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | |
| | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority:</u>**

Ninth Circuit Manual of Model Civil Jury Instructions (2017 edition, updated Sept. 2018) § 15.18 (modified).

**Defendants' Objections**

Unix joins in Xu's objections and proposed alternative instruction, as set forth below.

**Ms. Xu's Comments and Authority.**

The Ninth Circuit Model Instruction provides that the instruction should "describe the plaintiff's trade dress." In its First Amended Complaint, BLK identifies its trade dress as its "packaging," not its product. First Amended Complaint, ¶¶ 86-93. Therefore, BLK may not now claim that its trade dress includes its "product" or any other matter.

The use of the phrase "BLK's trade dress" in certain context is confusing and prejudicial. It permits the jurors to assume that BLK has established that the Defendants are in fact using BLK's trade dress.

There is no need to instruct on expansion of markets. *Metro Pub. Ltd. V. San Jose Mercury News* (9th Cir. 1993) 987 F.2d 637, 640.

The last element is added to instruct the jury that the prominent placement of brand names may eliminate confusion. *See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.* (2d Cir. 1992) 973 F.2d 1033, 1046; *Sazarec Company, Inc. v. Fetzer Vineyards, Inc.* (N.D. Cal. 2017) 265 F.Supp.3d 1013, 1034; *Brookfield Communications, Inc. v. West Coast Entertainment* (9th Cir. 1999) ("[N]on-listed variations of the *Sleekcraft* test may often be quite important.")

**Ms. Xu's Proposed Alternative Instruction follows on next page**

**INSTRUCTION NO. 15.18 (Alternate)**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW**
**INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS—*SLEEKCRAFT* TEST**

You must consider whether Unix and Xu's [BLK to describe trade dress] is likely to cause confusion about the source of BLK's or Xu's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1) Strength or Weakness of BLK's Trade Dress. The more the consuming public recognizes BLK's trade dress as an indication of origin of BLK's goods, the more likely it is that consumers would be confused about the source of Xu's goods if Xu uses similar trade dress.

(2) Unix and Xu's Use of the [BLK to describe trade dress]. If Unix, Xu and BLK use their designs on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3) Similarity of BLK's and Xu's Trade DressIf the overall impression created by BLK's trade dress in the marketplace is similar to that created by Xu's trade dress, there is a greater chance that consumers are likely to be confused by Unix and Xu's use of the design. Similarities in appearance weigh more heavily than differences in finding the designs are similar.

(4) Actual Confusion. If use by Unix and Xu of their trade dress has led to instances of actual confusion with BLK, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, Unix and Xu's use of the trade dress may still be likely to cause confusion. As you consider whether the trade dress used by Unix and Xu creates for consumers a likelihood of confusion with BLK's trade dress, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5) Unix and Xu's Intent. Knowing use by Unix and Xu of BLK's trade dress to identify similar goods may strongly show an intent to derive benefit from the reputation of BLK's trade dress, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that Unix and Xu acted knowingly, the use of similar trade dress to identify similar goods may indicate a likelihood of confusion.

(6) Marketing/Advertising Channels. If BLK's and Xu's goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7) Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the

more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in BLK's and Xu's trade dress.

(8) Other markings.  The presence and prominence of markings tending to dispel confusion as to the origin, sponsorship or approval of the goods in question is highly relevant to an inquiry concerning the similarity of the two dresses. When prominently displayed it can go far towards eliminating any possible confusion.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**INSTRUCTION NO. 15.19A**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND**
**CALIFORNIA COMMON LAW**

**INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTOR—STRENGTH OF**
**TRADE DRESS**

Strength as a Factor for Evaluating Likelihood of Confusion

How strongly BLK's trade dress indicates that the goods come from a particular source is an important factor to consider in determining whether the trade dress used by Unix is likely to create confusion with BLK trade dress.

BLK asserts that the design of the product or packaging of BLK water is trade dress for its goods. BLK contends that Unix's use of the design of its product or packaging in connection with Unix's USA Product infringes BLK's trade dress because it is likely to cause confusion.

The Strength of the Trade Dress

The more distinctive and strong trade dress is, the greater the scope of protection the law provides.
The law measures trade dress strength by considering two prongs:

1. Commercial Strength: This is the amount of marketplace recognition of the trade dress; and
2. Conceptual Strength: This is the placement of the trade dress on the spectrum of trade dress.

Commercial Strength: What is "commercial strength?" Not all trade dress is equally well known. Trade dress strength is somewhat like the renown of people. Only a few very famous people are widely known and recognized around the world. Most people are known and recognized only by a small circle of family and friends.

Some trade dress is relatively "strong," in the sense it is widely known and recognized. A few trade dress designs are in the clearly "famous" category. An example of "famous" trade dress is the red and white soda can for Coca-Cola. Some trade dress may be strong and well known only in a certain market niche such as mountain climbing gear, plumbing supplies, or commercial airplane electronics equipment, but relatively weak outside that field.

Conceptual Strength: What is "conceptual strength?" All trade dress is grouped into two categories: either inherently distinctive or not inherently distinctive. If trade dress is inherently distinctive it is immediately protected when first used. If it is not inherently distinctive, to become legally protected trade dress, it must acquire distinctiveness in people's minds by becoming known as an indication of the source of goods or services. The law calls this "secondary meaning."

For determining the conceptual strength of trade dress, trade dress is grouped on a spectrum

238087.1

according to the nature of the trade dress. In the spectrum, there are three categories of trade dress that the law regards as being inherently distinctive: arbitrary, fanciful, and suggestive. Descriptive trade dress is regarded as not being inherently distinctive and requires a secondary meaning to become valid trade dress. Generic trade dress is not entitled to protection.

Arbitrary and fanciful trade dress employs a design with no commonly understood connection to the product. For instance, the trade dress for an apple-flavored candy product would be arbitrary or fanciful if the candy were sold in a box shaped like a television, with a screen in which you could see the small, apple flavored candy. It would also be arbitrary or fanciful if packaged in a container of some new and previously unknown shape. It is totally unrelated to the apple flavored candy, whether using the shape of the television that has no relation to an apple flavored candy, or fanciful, previously unknown shape.

Suggestive trade dress suggests some characteristic or quality of the goods with which it is used. If the consumer must use her or his imagination or think through a series of steps to understand what the trade dress is telling about the product, then the trade dress does not directly describe the product's features, but merely suggests them. For instance, the trade dress for an apple-flavored candy product would be suggestive if the producer were to sell the candy in a box shaped like a school text book. The text book appearance of the box connotes a characteristic of the product, allowing the consumer to infer something about the product from the trade dress. Here, the book packaging suggesting the idea of children bringing an apple to school to share with their favorite teacher, and that perhaps they can bring the candy in lieu of the apple. This can suggest to the consumer that the candies have an apple flavor.

Descriptive trade dress is not inherently distinctive. It directly describes some characteristic or quality of the goods with which it is used in a straightforward way that requires no exercise of imagination. For instance, the trade dress for an apple-flavored candy product would be descriptive if the producer sold the candy in a small plastic apple-shaped container. The packaging describes a characteristic of the product - it tastes like apple. This trade dress can only be protected if it acquires secondary meaning (e.g., while it does not "immediately" indicate the source of the candy, with time there may be proof that the small plastic apple container became known to children as the product of this particular maker of this apple flavored candy).

Generic trade dress does not identify the particular maker of a product at all, and instead identifies the product itself.  It is not entitled to any protection at all. For instance, the trade dress for an apple-flavored candy product would be generic if the candy were sold in red, plastic wrappers so that they looked like small round balls. Because they share a shape and color that many other candies have, the maker of the round apple flavored candy would not be able to get trade dress protection for this packaging. The red plastic wrapping on the small, round candy does not distinctively indicate any particular maker of candy, whatever its flavor.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____ <br> Stephen V. Wilson <br> Judge of the United States District Court <br> Central District of California |

**<u>Authority:</u>**
Ninth Circuit Manual of Model Civil Jury Instructions (2017 edition, updated Sept. 2018) § 15.19 (modified).

**Defendants' Objections**

Unix joins in Xu's objections and proposed alternative instruction, as set forth below.

**Ms. Xu's Objections and Authority**:

Ms. Xu does not believe this instruction is necessary as it is duplicative.  Further, BLK should describe its trade dress and is limited to the product's packaging for the reasons set forth above.

**Ms. Xu's Proposed Alternative Instruction follows on next page**

If given, the instruction should read (as follows on next page):

## INSTRUCTION NO. 15.19 (Alternate)
## TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW

### INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTOR—STRENGTH OF TRADE DRESS

Strength as a Factor for Evaluating Likelihood of Confusion

How strongly BLK's trade dress indicates that the goods come from a particular source is an important factor to consider in determining whether the trade dress used by Unix and Ms. Xu is likely to create confusion with BLK trade dress.

BLK asserts that the design of the product or packaging of BLK water[BLK to describe trade dress] is trade dress for its goods. BLK contends that Unix's the use of the design of its product or packaging [BLK to describe trade dress] in connection with Unix's the USA Product infringes BLK's trade dress because it is likely to cause confusion.

The Strength of the Trade Dress

The more distinctive and strong trade dress is, the greater the scope of protection the law provides.

The law measures trade dress strength by considering two prongs:

1. Commercial Strength: This is the amount of marketplace recognition of the trade dress; and

2. Conceptual Strength: This is the placement of the trade dress on the spectrum of trade dress.

Commercial Strength: What is "commercial strength?" Not all trade dress is equally well known. Trade dress strength is somewhat like the renown of people. Only a few very famous people are widely known and recognized around the world. Most people are known and recognized only by a small circle of family and friends.

Some trade dress is relatively "strong," in the sense it is widely known and recognized. A few trade dress designs are in the clearly "famous" category. An example of "famous" trade dress is the red and white soda can for Coca-Cola. Some trade dress may be strong and well known only in a certain market niche such as mountain climbing gear, plumbing supplies, or commercial airplane electronics equipment, but relatively weak outside that field.

Conceptual Strength: What is "conceptual strength?" All trade dress is grouped into two categories: either inherently distinctive or not inherently distinctive. If trade dress is inherently distinctive it is immediately protected when first used. If it is not inherently distinctive, to become legally protected trade dress, it must acquire distinctiveness in people's minds by becoming known as an indication of the source of goods or services. The law calls this "secondary meaning."

For determining the conceptual strength of trade dress, trade dress is grouped on a spectrum according to the nature of the trade dress. In the spectrum, there are three categories of trade dress that the law regards as being inherently distinctive: arbitrary, fanciful, and suggestive. Descriptive trade dress is regarded as not being inherently distinctive and requires a secondary meaning to become valid trade dress. Generic trade dress is not entitled to protection.

Arbitrary and fanciful trade dress employs a design with no commonly understood connection to the product. For instance, the trade dress for an apple-flavored candy product would be arbitrary or fanciful if the candy were sold in a box shaped like a television, with a screen in which you could see the small, apple flavored candy. It would also be arbitrary or fanciful if packaged in a container of some new and previously unknown shape. It is totally unrelated to the apple flavored candy, whether using the shape of the television that has no relation to an apple flavored candy, or fanciful, previously unknown shape.

Suggestive trade dress suggests some characteristic or quality of the goods with which it is used. If the consumer must use her or his imagination or think through a series of steps to understand what the trade dress is telling about the product, then the trade dress does not directly describe the product's features, but merely suggests them. For instance, the trade dress for an apple-flavored candy product would be suggestive if the producer were to sell the candy in a box shaped like a school text book. The text book appearance of the box connotes a characteristic of the product, allowing the consumer to infer something about the product from the trade dress. Here, the book packaging suggesting the idea of children bringing an apple to school to share with their favorite teacher, and that perhaps they can bring the candy in lieu of the apple. This can suggest to the consumer that the candies have an apple flavor.

Descriptive trade dress is not inherently distinctive. It directly describes some characteristic or quality of the goods with which it is used in a straightforward way that requires no exercise of imagination. For instance, the trade dress for an apple-flavored candy product would be descriptive if the producer sold the candy in a small plastic apple-shaped container. The packaging describes a characteristic of the product - it tastes like apple. This trade dress can only be protected if it acquires secondary meaning (e.g., while it does not "immediately" indicate the source of the candy, with time there may be proof that the small plastic apple container became known to children as the product of this particular maker of this apple flavored candy).

Generic trade dress does not identify the particular maker of a product at all, and instead identifies the product itself.  It is not entitled to any protection at all. For instance, the trade dress for an apple-flavored candy product would be generic if the candy were sold in red, plastic wrappers so that they looked like small round balls. Because they share a shape and color that many other candies have, the maker of the round apple flavored candy would not be able to get trade dress protection for this packaging. The red plastic wrapping on the small, round candy does not distinctively indicate any particular maker of candy, whatever its flavor.

| GIVEN: | | |
|---|---|---|
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | |
| | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

## INSTRUCTION NO. 15.99A

## TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW

## TRADE DRESS DAMAGES—IN GENERAL

If you find that BLK has proven by a preponderance of the evidence that Unix and Xu have infringed upon BLK's trade dress, then there are two forms of monetary relief to which BLK may be entitled: BLK's actual damages or Unix and Xu's profits.

In determining the amount of money to award BLK for its trade dress claim, you must determine the date on which damages began to accrue. Damages for trade dress infringement of BLK's trade dress started on the date that the conduct that infringed the BLK trade dress began. You may award BLK money damages for all violations that occurred on the date the product that infringed BLK's trade dress was released and any date after that.

Proof of damages to a certainty is not required. However, the burden is on BLK to show any damages to a reasonable certainty, and awarded damages may not be speculative.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority:</u>**

*Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK (N.D. Cal. Aug. 21, 2012), Dkt. 1901, at 93 (Final Jury Instruction No. 71—Trade Dress Damages In General).

**Defendants' Objections**

Ms. Xu does not object to the inclusion of this instruction.

Unix objects to this instruction, as it is not supported by the Ninth Circuit Manual of Model Civil
Jury Instructions and/or the cited authority.

**INSTRUCTION NO. 15.27A**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND
CALIFORNIA COMMON LAW**

**TRADE DRESS DAMAGES—PLAINTIFF'S ACTUAL DAMAGES**

If you find for BLK on BLK's infringement claim, you must determine BLK's actual damages.

BLK has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate BLK for any injury you find was caused by Unix and Xu's infringement of BLK's trade dress.

You should consider the following:

(1) The injury to BLK's reputation;

(2) The injury to BLK's goodwill, including injury to BLK's general business reputation;

(3) The lost profits that BLK would have earned but for Unix and Xu's infringement. Profit is determined by deducting all expenses from gross revenue;

(4) The expense of preventing customers from being deceived; and

(5) The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of BLK's trade dress at the time of the infringement by Unix and Xu.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority:</u>**

Ninth Circuit Manual of Model Civil Jury Instructions (2017 edition, updated Sept. 2018) § 15.27 (modified); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK (N.D. Cal. Aug. 21, 2012), Dkt. 1901, at 94 (Final Jury Instruction No. 72—Trade Dress Damages—Plaintiff's Actual Damages).

**<u>Defendants' Objections</u>**

Unix joins in Xu's objections, as set forth below.

**<u>Ms. Xu's Objections</u>**:

There is no evidence or argument about most of these items of damages, such as future corrective advertising or reputational harm.  Therefore, the jury should not be instructed on these items.

**<u>Ms. Xu's Proposed Instruction follows on the next page:</u>**

If the jury is instructed on these items, the instruction should read as follows:

**INSTRUCTION NO. 15.27 (Alternate)**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW**

**TRADE DRESS DAMAGES—PLAINTIFF'S ACTUAL DAMAGES**

If you find for BLK on BLK's infringement claim, you must determine BLK's actual damages.

BLK has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate BLK for any injury you find was caused by any infringement of BLK's trade dress.

You should consider the following:

(1) The injury to BLK's goodwill, including injury to BLK's general business reputation; and

(2) The lost profits that BLK would have earned but for Unix and Xu's infringement. Profit is determined by deducting all expenses from gross revenue.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**INSTRUCTION NO. 15.29A**
**TRADE DRESS INFRINGEMENT UNDER LANHAM ACT (15 U.S.C. § 1125(A)) AND CALIFORNIA COMMON LAW**

**TRADE DRESS DAMAGES—DEFENDANT'S PROFITS**

In addition to actual damages, BLK is entitled to any profits earned by Unix and Xu that are attributable to the infringement, which BLK proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of Unix and Xu's receipts from using BLK's trade dress in the sale of the USA Product. BLK has the burden of proving Unix and Xu's gross revenue by a preponderance of the evidence.

Expenses are all operating and production costs incurred in producing the gross revenue. Unix and Xu have the burden of proving the expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the USA Product using BLK's trade dress is attributable to factors other than use of BLK's trade dress, you should find that the total profit is attributable to the infringement.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority:</u>**

Ninth Circuit Manual of Model Civil Jury Instructions (2017 edition, updated Sept. 2018) § 15.29 (modified).

**Defendants' Objections**

Unix joins in Xu's objections, as set forth below.

**Ms. Xu's Objections and Authority:**

Ms. Xu objects to giving this instruction.  The Seventh Amendment does not provide for a right
to a jury trial on the question of profits to be disgorged.  *Fifty-Six Hope Road Music, Ltd. V.
AVELA, Inc.* (9th Cir. 2015) 778 F.3d 1059, 1074-76.

The jury cannot be instructed on both damages and disgorgement; BLK must choose.  "Recovery
of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a
double recovery under the Lanham Act."  *Nintendo of America, Inc. v. Dragon Pacific
International* (9th Cir. 1994) 40 F.3d 1007, 1010.

## INSTRUCTCTION NO. 1125(a)-1
## FALSE ADVERTISING UNDER LANHAM ACT (15 U.S.C. § 1125(a)(1)(B))

### FALSE ADVERTISING CLAIMS

A federal law known as the Lanham Act prohibits a commercial business from engaging in unfair competition against a business competitor by using false or misleading descriptions or representations in the advertising and sale of its goods and services.

BLK claims Xu and Unix committed false advertising in violation of the Lanham Act by (1) publishing an article featured on the "We Chat" social media service which falsely claimed BLK water was manufactured in Canada; (2) applying a 3-year expiration date to the "USA Water" instead of a 2-year expiration date; and (3) falsely representing the pH of the "USA Water" .

Xu denied that she intentionally made any false representations in the article and Unix denies any involvement with the article.

BLK seeks money damages for the false advertising claims against Unix and Xu.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**Authority**

15 U.S.C. § 1125(a)(1)(B); *FLIR Systems, Inc. v. Sierra Media, Inc.*, Case No. 3:10-cv-00971-HU (Aug. 8, 2013) [Dkt. No. 395 (jury instr. false advertising at 25-27)].

**Defendants Objections**

Unix joins in Xu's objections, as set forth below.

**Ms. Xu's Objections and Authority:**

Ms. Xu objects to this instruction.  The complaint does not allege a claim for false advertising under the Lanham Act.

**INSTRUCTION NO. 1125(a)-2**
**FALSE ADVERTISING UNDER LANHAM ACT (15 U.S.C. § 1125(a)(1)(B))**

**FALSE ADVERTISING—ELEMENTS OF THE CLAIM**

To prevail on a false advertising claim under the Lanham act, the party bringing the claim must prove the following five elements by a preponderance of the evidence:

1. The party against whom the claim is asserted made a false or misleading statement of fact in a commercial advertisement about its product or another's product;
2. The false statement actually deceived, or had the tendency to deceive, a substantial segment of the target audience;
3. The deception was material because it is likely to influence the purchasing decision of consumers of that product;
4. The party against whom the claim is asserted caused the false statement to enter interstate commerce;
5. The party asserting the claim has been, or is likely to be, injured as a result of the false statement.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority</u>**

15 U.S.C. § 1125(a)(1)(B); *FLIR Systems, Inc. v. Sierra Media, Inc.*, Case No. 3:10-cv-00971-HU (Aug. 8, 2013) [Dkt. No. 395 (jury instr. false advertising at 28).]

**<u>Defendants Objections</u>**

Unix joins in Xu's objections, as set forth below.

**<u>Ms. Xu's Objections and Authority:</u>**

Ms. Xu objects to this instruction.  The complaint does not allege a claim for false advertising under the Lanham Act.

**INSTRUCTION NO. 1125(a)-3**
**FALSE ADVERTISING UNDER LANHAM ACT (15 U.S.C. § 1125(a)(1)(B))**

**FALSE OR MISLEADING STATEMENT**

A statement is false if it is both unambiguous and literally false, either on its face or by necessary implication.  When evaluating whether an advertisement is literally false, the claim must be analyzed in full context.

A statement is misleading if it literally true, but it is likely to confuse or mislead its intended audience.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**Authority**

15 U.S.C. § 1125(a)(1)(B); *FLIR Systems, Inc. v. Sierra Media, Inc.*, Case No. 3:10-cv-00971-
HU (D. Or. Aug. 8, 2013) [Dkt. No. 395 (jury instr. false advertising at 29).]

**<u>Defendants Objections</u>**

Unix joins in Xu's objections, as set forth below.

**<u>Ms. Xu's Objections and Authority:</u>**

Ms. Xu objects to this instruction.  The complaint does not allege a claim for false advertising under the Lanham Act.

**INSTRUCTION NO. 1125(a)-4**
**FALSE ADVERTISING UNDER LANHAM ACT (15 U.S.C. § 1125(a)(1)(B))**

**DECEPTION AND MATERIALITY**

A deception is material if it was likely to influence the decision of consumers in making purchasing decisions.  The question is whether the allegedly deceptive statement, itself, is material, not whether the advertisement as a whole is material.

If a statement is literally false and if the party who made the statement intended to mislead consumers, then it is presumed that consumers actually were deceived or misled, and the deception was material.  The party who made the challenged statement may rebut this presumption by submitting evidence that consumers were not deceived, or the deception was not likely to influence consumers' purchasing decisions.

If the challenged statement is not literally false and is misleading in context, then the party suing because of the statement must prove the advertising actually conveyed the implied message and thereby actually deceived a significant portion of the recipients.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority</u>**

15 U.S.C. § 1125(a)(1)(B); *FLIR Systems, Inc. v. Sierra Media, Inc.*, Case No. 3:10-cv-00971-HU (D. Or. Aug. 8, 2013) [Dkt. No. 395 (jury instr. false advertising at 30).]

**<u>Defendants Objections</u>**

Unix joins in Xu's objections, as set forth below.

**<u>Ms. Xu's Objections and Authority:</u>**

Ms. Xu objects to this instruction.  The complaint does not allege a claim for false advertising under the Lanham Act.

**INSTRUCTION NO. 1125(a)-5**
**FALSE ADVERTISING UNDER LANHAM ACT (15 U.S.C. § 1125(a)(1)(B))**

**INJURY**

For advertisements that make comparisons between the parties' products, if the party asserting the claim proves the challenged statement was intentionally false or misleading, then it is presumed the party asserting the claim was injured. The party who made the challenged statement in the comparative advertisement may rebut this presumption by submitting evidence that the party asserting the claim was not injured.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**Authority**

15 U.S.C. § 1125(a)(1)(B); *FLIR Systems, Inc. v. Sierra Media, Inc.*, Case No. 3:10-cv-00971-HU (D. Or. Aug. 8, 2013) [Dkt. No. 395 (jury instr. false advertising at 31).]

**Defendants Objections**

Unix joins in Xu's objections, as set forth below.

**Ms. Xu's Objections and Authority:**

Ms. Xu objects to this instruction.  The complaint does not allege a claim for false advertising under the Lanham Act.

**INSTRUCTION NO. 2102A**

**CONVERSION**

**PRESUMED MEASURE OF DAMAGES FOR CONVERSION (CALIFORNIA CIV. CODE, § 3336)**

If you decide that BLK has proved its conversion claim against Unix, you also must decide how much money will reasonably compensate BLK for the harm.  This compensation is called "damages."

BLK must prove the amount of its damages. However, BLK does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by BLK:

1. Special damages in the form of BLK's lost profits on the pallets of raw fulvic minerals, packing and labeling materials, and bottles of BLK water; and

2. Reasonable compensation for the time and money spent by BLK in attempting to recover the raw fulvic minerals, packing and labeling materials, and bottles of BLK water.

In order to recover special damages, BLK must prove:

1. That Unix's conversion of the pallets of raw fulvic materials, packing and labeling materials and bottles of BLK water is reasonably certain to have caused BLK to suffer lost profits;

2. That it was reasonably foreseeable that lost profits would result from the conversion; and

3. That reasonable care on BLK's part would not have prevented the loss.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____ <br> Stephen V. Wilson <br> Judge of the United States District Court <br> Central District of California |

**<u>Authority</u>**

CACI 2102; CACI 3903N (on lost profits); Cal. Civ. Code § 3336 (presumptive measure of damages for conversion based on value of converted property at time of conversion or, in the alternative, compensation for loss legally caused by conversion and that could be avoided by proper prudence); *LLC v. John Gregory Lawson (In re Lawson)*, No. ADV 13-01105, 2015 WL 1291366, at *5 (B.A.P. 9th Cir. Mar. 20, 2015) ("[T]hese lost profit damages, thus, are equally recoverable under both the conversion and breach of contract claims," citing Cal. Civil Code § 3336).

**<u>Unix's Objections To BLK's CACI No. 2102 Instruction</u>:**

Unix objects to BLK's version because it improperly combines numerous CACI forms and, therefore, is unnecessarily confusing.  In contrast, Unix's version properly follows only CACI No. 2102.

**INSTRUCTION NO. _**
**PRESUMED MEASURE OF DAMAGES FOR CONVERSION (CIV. CODE, § 3336)**

If you decide that BLK has proved its claim against Unix, you also must decide how much money will reasonably compensate BLK for the harm. This compensation is called "damages."

BLK must prove the amount of its damages. However, BLK does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by BLK:

1. The fair market value of the inventory at the time BLK wrongfully exercised control over it.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**Authority:**

CACI No. 2102

**INSTRUCTION NO. 304A**
**BREACH OF CONTRACT**

**ORAL AND WRITTEN CONTRACT TERMS**

Contracts may be written or oral.

Contracts may be partly written and partly oral.

Oral contracts are just as valid as written contracts.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority</u>**

CACI 304.

**<u>Unix's Objections To BLK's CACI No. 304 Instruction:</u>**

Unix objects to this instruction as inapplicable to this case.  BLK does not allege a claim for breach of oral contract.

**INSTRUCTION NO. 305A**
**BREACH OF CONTRACT**

**IMPLIED-IN-FACT CONTRACT**

In deciding whether a contract was created, you should consider the conduct and relationship of the parties as well as all the circumstances of the case.

Contracts can be created by the conduct of the parties, without spoken or written words. Contracts created by conduct are just as valid as contracts formed with words.

Conduct will create a contract if the conduct of both parties is intentional and each knows, or has reason to know, that the other party will interpret the conduct as an agreement to enter into a contract.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority</u>**

CACI 305.

**<u>Unix's Objections To BLK's CACI No. 305 Instruction</u>:**

Unix objects to this instruction as inapplicable to this case.  BLK does not allege a claim for breach of implied-in-fact contract.

**INSTRUCTION NO. 306A**
**BREACH OF CONTRACT**

**UNFORMALIZED AGREEMENT**

Unix contends that BLK and Unix did not enter into an agreement to manufacture and bottle BLK's product because they had not signed a final written agreement. To prove that a contract was created, BLK must prove both of the following:

1. That the parties understood and agreed to the terms of the agreement; and

2. That the parties agreed to be bound before a written agreement was completed and signed.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority</u>**
CACI 306.

**<u>Unix's Objections To BLK's CACI No. 306 Instruction:</u>**

Unix objects to this instruction as inapplicable to this case.  BLK does not allege a claim for breach of an unformalized agreement.

**INSTRUCTION NO. 350A**
**BREACH OF CONTRACT**

**INTRODUCTION TO CONTRACT DAMAGES**

If you decide that BLK has proved its claim against Unix for breach of the contract, you must decide how much money will reasonably compensate BLK for the harm caused by the breach. This compensation is called "damages."  The purpose of such damages is to put BLK in as good a position as it would have been if Unix had performed as promised.

To recover damages for any harm, BLK must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

BLK also must prove the amount of its damages according to the following instructions.  It does not have to prove the exact amount of damages.  You must not speculate or guess in awarding damages.

BLK claims damages for:  (1) lost profits, (2) loss of value; (3) out-of-pocket and itemized costs; and (4) other commercial and economic loss.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | |
| | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority</u>**
CACI 350.

**<u>Unix's Objections To BLK's CACI No. 350 Instruction:</u>**

Unix objects to this instruction because it improperly includes "other commercial and economic loss," which is also claimed in connection with BLK's conversion claim.  See Unix's competing version, which properly follows the CACI form and only includes BLK's alleged contractual damages.

**INSTRUCTION NO. _**
**INTRODUCTION TO CONTRACT DAMAGES**

If you decide that BLK has proved its claim against Unix for breach of contract, you also must decide how much money will reasonably compensate BLK for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put BLK in as good a position as it would have been if Unix had performed as promised.

To recover damages for any harm, BLK must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

BLK also must prove the amount of its damages according to the following instructions. It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

BLK claims damages for Unix's alleged breach of the NDA and the purported manufacturing agreement.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority:</u>**
CACI No. 350

**INSTRUCTION NO. 351A**
**BREACH OF CONTRACT**

**SPECIAL DAMAGES**

BLK claims damages for its lost profits and loss of value to its business.

To recover for this harm, BLK must prove that when the parties made the contract, Unix knew or reasonable should have known of the special circumstances leading to the harm.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority</u>**
CACI 351.

**<u>Unix's Objections To BLK's CACI No. 351 Instruction:</u>**

Unix objects to this instruction as duplicative.  These alleged damages are already included in CACI 350.

**INSTRUCTION NO. 434A**
**NEGLIGENCE**

**CAUSATION:  MULTIPLE CAUSES**

A person's negligence may combine with another factor to cause harm. If you find that Unix's negligence was a substantial factor in causing BLK's harm, then Unix is responsible for the harm. Unix cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing BLK's harm.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority</u>**
CACI 434.

**Unix's Objections To BLK's CACI No. 434 Instruction (Negligence-Causation: Multiple Causes):**  Unix objects to this instruction as inapplicable to this case.  BLK does not assert a negligence claim involving multiple causes.  This case does not involve joint tortfeasors.

**INSTRUCTION NO. 454A**
**NEGLIGENCE**

**AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS**

Unix contends that BLK's lawsuit was not filed within the time set by law. To succeed on this defense, Unix must prove that BLK's claimed harm occurred before February 9, 2014.

| GIVEN: | | |
|---|---|---|
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority</u>**

CACI 454; Cal. Code Civ. Proc., § 337, subd. (1) [four-year statute of limitation for breach of duty arising out of a written contract].

**Unix's Objections To BLK's CACI No. 454 Instruction (Affirmative Defense - Statute Of Limitations):**  Unix objects to BLK's version as it contains the wrong statute of limitations period for a negligence claim, which is 2 years (not 4 years as set forth in BLK's version).  See Unix's version (separate submitted as No. 454B), which contains the correct statute of limitations period of 2 years for a negligence claim.

**Unix's Proposed Instruction has been separate submitted as No. 454B and follows on next page**

238087.1

**INSTRUCTION NO. 454B**
**NEGLIGENCE**

**AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS**

Unix contends that BLK's lawsuit was not filed within the time set by law. To succeed on this defense, Unix must prove that BLK's claimed harm occurred before February 5, 2016.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

**<u>Authority:</u>**
CACI No. 454

**INSTRUCTION NO. 3900A**
**NEGLIGENCE**

**INTRODUCTION TO TORT DAMAGES—LIABILITY CONTESTED**

If you decide that BLK has proved it claim against Unix, you also must decide how much money will reasonably compensate BLK for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Unix's wrongful conduct, even if the particular harm could not have been anticipated.

BLK does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by BLK:

    (1) Lost or destroyed inventory;
    (2) Lost profits;
    (3) Loss in value; and
    (4) Out-of-pocket and itemized costs.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____ <br> Stephen V. Wilson <br> Judge of the United States District Court <br> Central District of California |

238087.1

**<u>Authority</u>**

CACI 3900.

**Unix's Objections To BLK's CACI No. 3900 Instruction (Introduction To Tort Damages):**
Unix objects to BLK's version as it improperly includes purported damages for "lost or destroyed inventory," which BLK also seeks to recover in connection with its conversion claim.  In contrast, Unix's version of this instruction properly only includes BLK's purported tort damages.

**Unix's proposed instruction has been separately submitted as CACI No. 3900B and follows on next page**

**INSTRUCTION NO. 3900B**
**INTRODUCTION TO TORT DAMAGES—LIABILITY CONTESTED**

If you decide that BLK has proved its claim against Unix, you also must decide how much money will reasonably compensate BLK for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Unix's wrongful conduct, even if the particular harm could not have been anticipated.

BLK does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by BLK:

1. Out-of-pocket costs and itemized claims;
2. Lost profits; and
3. Loss in business value.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | |
| | | _____ <br> Stephen V. Wilson <br> Judge of the United States District Court <br> Central District of California |

238087.1

**<u>Authority:</u>**
CACI No. 3900

**INSTRUCTION NO. 3903A**
**NEGLIGENCE**

**ITEMS OF ECONOMIC DAMAGE**

The following are the specific items of economic damages requested by BLK:

(1) The loss or destruction of BLK's inventory.
(2) Lost profits;
(3) Loss in value;
(4) Out-of-pocket or itemized costs.

To recover damages for harm to inventory, BLK must prove the reduction in the inventory's value or the reasonable cost of repairing it, whichever is less.

To recover damages for the loss or destruction of BLK's inventory, BLK must prove the fair market value of the loss of inventory before the harm occurred.

"Fair market value" is the highest price that a willing buyer would have paid to a willing seller, assuming:

1. That there is no pressure on either one to buy or sell; and
2. That the buyer and seller are fully informed of the condition and quality of the inventory.

(5) Lost profits.

To recover damages for lost profits, BLK must prove it is reasonably certain it would have earned profits but for Unix's conduct.

To decide the amount of damages for lost profits, you must determine the gross amount BLK would have received but for Unix's conduct and then subtract from that amount the expenses BLK would have had if Unix's conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | |
| | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority</u>**
CACI 3903; 3903K, 3903N.

**Unix's Objections To BLK's CACI No. 3903; 3903K; 3903N Instruction (Items of Economic Damages):**  Unix objects to this instruction as it improperly includes "loss of inventory," which it also seeks to recover in connection with its conversion claim.  This instruction also improperly includes several CACI forms, which will likely confuse the jury.  In contrast, Unix's version of this instruction properly includes only BLK's purported tort damages and follows CACI No. 3903 only.


**Unix's Proposed Instruction has been separate submitted as No. 3903B and follows on the next page**

238087.1

**INSTRUCTION NO. 3903B**
**ITEMS OF ECONOMIC DAMAGES**

The following are the specific items of economic damages claimed by BLK:

1.   Out-of-pocket costs and itemized claims;
2.   Lost profits; and
3.   Loss in business value.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority:</u>**
CACI No. 3903

## INSTRUCTION NO. 3933A

## DAMAGES FROM MULTIPLE DEFENDANTS

In this case, BLK seeks damages from multiple defendants, Unix and Xu.  You must determine the liability of each Defendant to BLK separately.

If you determine that more than one defendant is liability to BLK for damages, you will be asked to find BLK's total damages and the comparative fault of the Defendants.

In deciding on the amount of damages, consider only BLK's claimed losses.  Do not attempt to divide the damages between the Defendants.  The allocation of responsibility for payment of damages among multiple Defendants is to be done by the court after you reach your verdict.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

238087.1

**<u>Authority</u>**

CACI 3933.

**Defendants' Objections**

Unix joins in Xu's objections, as set forth below.

**Ms. Xu's Objections and Authority:**

Ms. Xu objects to this instruction.  The causes of action against Unix and Ms. Xu are not identical.  Unix is alleged to have caused damage separate and apart from the allegations against Ms. Xu.  This instruction is pertinent only in Proposition 51 cases involving non-economic damages.  *See* Comment to CACI 3931.

# III.
# INSTRUCTIONS PROPOUNDED BY DEFENDANTS, OPPOSED BY PLAINTIFF

**INSTRUCTION NO. 4401B**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS**

BLK claims that Defendants have misappropriated a trade secret. To succeed on this claim, BLK must prove all of the following:

1. That BLK owned the following information and methods concerning its BLK product, including:

   a)  humic mineral material formulations;

   b)  product specifications;

   c)  instructions on obtaining the alkaline pH value;

   d)  instructions on obtaining the black color;

   e)  instructions for product labeling;

   f)  supplier lists;

   g)  sales volume information;

   h)  customer lists;

   i)  customer information;

   j)  business and financial results and projections;

   k)  pricing models for different markets;

   l)  distributor contacts;

   m) marketing strategies;

   n)  certificates of analysis;

   o)  test results; and

   p)  packaging specifications.

2. That this information and methods were trade secrets at the time of the misappropriation;

3. That Defendants improperly acquired, used or disclosed the trade secrets;

237896.1

4. That BLK was harmed; and

5. That Defendants' acquisition, use or disclosure was a substantial factor in causing BLK's harm.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

237896.1

**<u>Authority:</u>**
CACI No. 4401.

**BLK's Objections**

Defendants argue that BLK should be required to list the trade secrets exactly as they were pled in BLK's complaint, yet Defendants cite to no authority for this proposition.  This formulation of the trade secrets was disclosed to Defendants in BLK's motion for summary judgment oppositions and is specifically worded based upon the benefit of discovery.

Defendants argue that the list of trade secrets ((a)-(p)) offered in BLK's proposed instruction, No. 4401A, does not describe the trade secrets with sufficient specificity, however BLK's list (pasted below) accurately specifies the trade secret information without making the list unworkable (by providing each packaging specification, test result, marketing strategy at issue, etc.).  Further, there is little difference with respect to specificity in the instructions proposed by BLK and Defendants.

**BLK's Proposed Instruction (No. 4401A)**

BLK claims that Defendants have misappropriated a trade secret. To succeed on this claim, BLK must prove all of the following:

1. That BLK owned at least one of the following:

   (a) its proprietary fulvic mineral material formulations;
   (b) product specifications;
   (c) instructions on obtaining the alkaline pH value;
   (d) instructions on obtaining black color;
   (e) instructions for product labeling;
   (f) supplier lists;
   (g) sales volume information;
   (h) customer lists;
   (i) customer information;
   (j) business and financial results and projections;
   (k) pricing models for different markets;
   (l) distributor contacts;
   (m) marketing strategies;
   (n) certificates of analysis;
   (o) test results; and
   (p) packaging specifications

2. That this information and methods were trade secrets at the time of the misappropriation;
3. That Defendants improperly acquired, used, or disclosed any of this information;
4. That BLK was harmed; and
5. That Defendants' acquisition, use, or disclosure of trade secrets was a substantial factor in causing BLK's harm.

237896.1

**INSTRUCTION NO. 4406B**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**MISAPPROPRIATION BY DISCLOSURE**

Unix misappropriated BLK's trade secrets by disclosure if:

1. Unix disclosed a trade secret without BLK's consent; and

2. Unix, at the time of disclosure, knew or had reason to know that its knowledge of BLK's trade secrets was acquired under circumstances giving rise to a duty to maintain secrecy, which created a duty to keep the information and methods secret.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

237896.1

**<u>Authority:</u>**
CACI No. 4406.

**BLK's Objections**

Defendants argue that "there is no allegation that Unix obtained any trade secrets through improper means or through third parties [so] those elements of the instruction should not be given." (*See* Xu's Obj. to BLK's Inst. No. 4406A.)   However, BLK has presented ample evidence of such misappropriation, including that Xu knew that BLK disclosed its trade secrets to Unix pursuant to an NDA, as BLK briefed extensively in its opposition to Xu's motion for summary judgment.

In any event, it is for the jury to decide what type of misappropriation there is evidence of based upon a complete instruction.  Defendants should not be permitted to limit the instruction based upon what they contend the misappropriation evidence says.

**BLK's Proposed Alternative Instruction (No. 4406A)**

A Defendant misappropriated BLK's trade secrets by disclosure if:

1. The Defendant disclosed them without BLK's consent; and

2. did any of the following:

      a. acquired knowledge of the trade secrets by improper means;

      b. at the time of disclosure, knew or had reason to know that its knowledge of BLK's trade secrets came from or through a third party, and that third party had previously acquired the trade secrets by improper means;

      c. at the time of disclosure, knew or had reason to know that its knowledge of BLK's trade secrets was acquired under circumstances giving rise to a duty to maintain secrecy, which created a duty to keep the information and methods secret;

      d. at the time of disclosure, knew or had reason to know that its knowledge of BLK's trade secrets came from or through a third party, and that third party had a duty to keep the information and methods secret;

      e. Before a material change of its position, knew or had reason to know that they were trade secrets and that knowledge of them had been acquired by accident or mistake.

**INSTRUCTION NO. 4407B**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.)**
**(CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426 ET SEQ.)**

**MISAPPROPRIATION BY USE**

A Defendant misappropriated BLK's trade secrets by use if a Defendant:

1. used a trade secret without BLK's consent; and
2. did any of the following:

   a. at the time of use, knew or had reason to know that its knowledge of the trade secret was acquired under circumstances creating a legal obligation to limit use of the trade secret; or

   b. at the time of use, knew or had reason to know that its knowledge of the trade secret came from or through a third party, and that third party had a duty to BLK to limit use of the trade secret.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

237896.1

**<u>Authority:</u>**
CACI No. 4407

**BLK's Objections**

Again, Defendants try to limit the instruction on misappropriation to those theories that they contend have been alleged against their clients.  (*See* Xu's Obj. to BLK's Inst. No. 4407A.)  However, it is for the jury to decide what type of misappropriation there is evidence of based upon a complete instruction. Defendants should not be permitted to limit the instruction based upon what they contend the misappropriation evidence says.

**BLK's Proposed Instruction (No. 4407A)**

A Defendant misappropriated BLK's trade secrets by use if a Defendant:

1. used them without BLK's consent; and
2. did any of the following:

   a.  acquired knowledge of the trade secrets by improper means;

   b.  at the time of use, knew or had reason to know that its knowledge of the trade secrets came from or through a third party, and that third party had previously acquired the trade secrets by improper means;

   c.  at the time of use, knew or had reason to know that its knowledge of the trade secrets was acquired under circumstances creating a legal obligation to limit use of the methods and information;

   d.  at the time of use, knew or had reason to know that its knowledge of the trade secrets came from or through a third party, and that third party had a duty to BLK to limit use of the methods or information;

   e.  Before a material change of its position, knew or had reason to know that they were trade secrets and that knowledge of them had been acquired by accident or mistake.

**INSTRUCTION NO. 2102B**
**CONVERSION**

**PRESUMED MEASURE OF DAMAGES FOR CONVERSION (CAL. CIV. CODE, § 3336)**

If you decide that BLK has proved its claim against Unix, you also must decide how much money will reasonably compensate BLK for the harm. This compensation is called "damages."

BLK must prove the amount of its damages. However, BLK does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by BLK:

1. The fair market value of the inventory at the time BLK wrongfully exercised control over it.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

237896.1

**<u>Authority:</u>**
CACI No. 2102.

**BLK's Objections**

Here, Unix tries to limit the instruction so that the jury does not learn of the types of specific and special damages available to BLK for conversion.  In BLK's proposed instruction (No. 2102A, pasted below), BLK includes additional categories of damage for (1) reasonable compensation for the time and money spent to recover the inventory and (2) special damages.  These categories of damages are expressly compensated by the CACI jury instructions and permitted under California law.   *See* CACI 2102; CACI 3903N (on lost profits); Cal. Civ. Code § 3336 (presumptive measure of damages for conversion based on value of converted property at time of conversion or, in the alternative, compensation for loss legally caused by conversion and that could be avoided by proper prudence); *LLC v. John Gregory Lawson (In re Lawson)*, No. ADV 13-01105, 2015 WL 1291366, at *5 (B.A.P. 9th Cir. Mar. 20, 2015) ("[T]hese lost profit damages, thus, are equally recoverable under both the conversion and breach of contract claims," citing Cal. Civil Code § 3336).  Therefore, the jury should be permitted to see instruction based upon these available categories of damages.

**BLK's Proposed Alternative Instruction (No. 2102A)**

If you decide that BLK has proved its conversion claim against Unix, you also must decide how much money will reasonably compensate BLK for the harm.  This compensation is called "damages."

BLK must prove the amount of its damages. However, BLK does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by BLK:

1.  Special damages in the form of BLK's lost profits on the pallets of raw fulvic minerals, packing and labeling materials, and bottles of BLK water; and
2.  Reasonable compensation for the time and money spent by BLK in attempting to recover the raw fulvic minerals, packing and labeling materials, and bottles of BLK water.

In order to recover special damages, BLK must prove:

1.  That Unix's conversion of the pallets of raw fulvic materials, packing and labeling materials and bottles of BLK water is reasonably certain to have caused BLK to suffer lost profits;
2.  That it was reasonably foreseeable that lost profits would result from the conversion; and

That reasonable care on BLK's part would not have prevented the loss.

**INSTRUCTION NO. 331B**
**BREACH OF CONTRACT**

**AFFIRMATIVE DEFENSE—BILATERAL MISTAKE**

Unix claims that there was no contract because both parties were mistaken about the production services to be provided by Unix to BLK. To succeed, BLK must prove both of the following:

1. That both parties were mistaken about the production services to be provided by Unix to BLK; and

2. That Unix would not have agreed to enter into this contract if it had known about the mistake.

If you decide that Unix has proved both of the above, then no contract was created.

| GIVEN: | | |
|---|---|---|
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | _____<br>Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

237896.1

**<u>Authority:</u>**
CACI No. 331.

**BLK's Objections**

BLK objects to this instruction because bilateral mistake is not an affirmative defense alleged in Unix's answer. *See* Unix Ans. (Dkt No. 12 at pp. 18-25).

**INSTRUCTION NO. 350B**
**BREACH OF CONTRACT**

**INTRODUCTION TO CONTRACT DAMAGES**

If you decide that BLK has proved its claim against Unix for breach of contract, you also must decide how much money will reasonably compensate BLK for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put BLK in as good a position as it would have been if Unix had performed as promised.

To recover damages for any harm, BLK must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

BLK also must prove the amount of its damages according to the following instructions. It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

BLK claims damages for Unix's alleged breach of the NDA and the purported "Production Agreement."

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | |
| | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

237896.1

**<u>Authority:</u>**
CACI No. 350.

**BLK's Objections**

The last paragraph of Unix's proposed instruction states that "BLK claims damages for Unix's alleged breach of the NDA and the purported 'Production Agreement,'" whereas CACI 350 permit BLK to "identify general damages claimed."  *See* CACI 350.  Therefore, in BLK's proposed instruction, No. 350A, BLK identifies the four categories of general damages claimed.

**BLK's Proposed Alternative Instruction (No. 350A)**

If you decide that BLK has proved its claim against Unix for breach of the contract, you must decide how much money will reasonably compensate BLK for the harm caused by the breach.  This compensation is called "damages."  The purpose of such damages is to put BLK in as good a position as it would have been if Unix had performed as promised.

To recover damages for any harm, BLK must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

BLK also must prove the amount of its damages according to the following instructions.  It does not have to prove the exact amount of damages.  You must not speculate or guess in awarding damages.

BLK claims damages for:  (1) lost profits, (2) loss of value; (3) out-of-pocket and itemized costs; and (4) other commercial and economic loss.

**INSTRUCTION NO. 454B**
**NEGLIGENCE**

**AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS**

Unix contends that BLK's lawsuit was not filed within the time set by law. To succeed on this defense, Unix must prove that BLK's claimed harm occurred before February 5, 2016.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

237896.1

**Authority:**

CACI No. 454.

**BLK's Objections**

The parties dispute which statute of limitations applies, a dispute which has been briefed extensively in the parties' motions for summary judgment set for hearing on October 29, 2018.  Unix contends that the statute of limitations is only two years under Code of Civil Procedure section 335.1, but that statute is limited to "an action for assault, battery, injury to, or for the death of, an individual caused by the wrongful act or neglect of another."  In other words, it is limited to negligence in personal injury actions.

The correct statute of limitations is Code of Civil Procedure section 337, subdivision (1) for an "action based upon the negligent performance of an implied obligation which is based upon a contract in writing."  Cal. Code Civ. Proc., § 337, subd. (1); *Bruckman v. Parliament Escrow Corp.*, 190 Cal. App. 3d 1051, 1058 (1987).  Specifically, Unix contracted in writing to perform bottling and manufacturing services of BLK's product, and BLK alleges that Unix breached its implied duty of carrying out those services with reasonable care.

**BLK's Proposed Alternative Instruction (No. 454A)**

Unix contends that BLK's lawsuit was not filed within the time set by law. To succeed on this defense, Unix must prove that BLK's claimed harm occurred before February 9, 2014.

**INSTRUCTION NO. 3900B**
**NEGLIGENCE**

**INTRODUCTION TO TORT DAMAGES—LIABILITY CONTESTED**

If you decide that BLK has proved its claim against Unix, you also must decide how much money will reasonably compensate BLK for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Unix's wrongful conduct, even if the particular harm could not have been anticipated.

BLK does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by BLK:

1. Out-of-pocket costs and itemized claims;
2. Lost profits; and
3. Loss in business value.

| | | |
|---|---|---|
| **GIVEN:** | | |
| **REFUSED:** | | |
| **MODIFIED:** | | |
| **WITHDRAWN:** | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

237896.1

**<u>Authority:</u>**
CACI No. 3900.

**BLK's Objections**

BLK and Unix's instructions are the same except that BLK alleges that it lost inventory as a result of Unix's negligence, and seeks lost or destroyed inventory as a category of damages.  BLK's proposed instruction (No. 3900A) therefore includes "lost or destroyed inventory" as an additional category of damages.

**BLK's Proposed Alternative Instruction**

If you decide that BLK has proved it claim against Unix, you also must decide how much money will reasonably compensate BLK for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Unix's wrongful conduct, even if the particular harm could not have been anticipated.

BLK does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by BLK:

    (1) Lost or destroyed inventory;
    (2) Lost profits;
    (3) Loss in business value; and
    (4) Out-of-pocket and itemized costs.

INSTRUCTION NO. 3903B
NEGLIGENCE

ITEMS OF ECONOMIC DAMAGE

The following are the specific items of economic damages claimed by BLK:
1. Out-of-pocket costs and itemized claims;
2. Lost profits; and
3. Loss in business value.

| GIVEN: | | |
|---|---|---|
| REFUSED: | | |
| MODIFIED: | | |
| WITHDRAWN: | | Stephen V. Wilson<br>Judge of the United States District Court<br>Central District of California |

237896.1

**<u>Authority:</u>**
CACI No. 3903

**BLK's Objections**

BLK and Unix's instructions are the same except that BLK's includes damages for the lost profits and lost inventory it alleges it suffered as a result of Unix's negligence.  These categories of damages are expressly contemplated for negligence under CACI 3903K and 3903N.

**BLK's Proposed Alternative Instruction (No. 3903A)**

The following are the specific items of economic damages requested by BLK:

    (1) The loss or destruction of BLK's inventory.
    (2) Lost profits;
    (3) Loss in value;
    (4) Out-of-pocket or itemized costs.

To recover damages for harm to inventory, BLK must prove the reduction in the inventory's value or the reasonable cost of repairing it, whichever is less.

To recover damages for the loss or destruction of BLK's inventory, BLK must prove the fair market value of the loss of inventory before the harm occurred.

"Fair market value" is the highest price that a willing buyer would have paid to a willing seller, assuming:

        1.  That there is no pressure on either one to buy or sell; and
        2.  That the buyer and seller are fully informed of the condition and quality of the inventory.

    (5)  Lost profits.

To recover damages for lost profits, BLK must prove it is reasonably certain it would have earned profits but for Unix's conduct.

To decide the amount of damages for lost profits, you must determine the gross amount BLK would have received but for Unix's conduct and then subtract from that amount the expenses BLK would have had if Unix's conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.